| 80 | 769 |
| 89 | 521 |
| 89 | 549 |
| 89 | 554 |
| 89 | 568 |
| 89 | 570 |
| f89 | 577 |

RUFUS F. LEARNED *v.* WILLIAM F. OGDEN ET AL.

1. TENANCY BY CURTESY. *Waste. Cutting trees. Trespass.*

   A tenant by the curtesy is without right to sell for mere profit trees growing on the inheritance, and his vendee who cuts and removes the same is liable in trespass to the reversioners.

2. SAME. *Statute of limitations. Joint actions. Infants.*

   A joint right of action for waste which accrues to remainder-men while they are infants is not barred by limitation as to any of them until the lapse of the statutory period after the youngest has attained his majority; but a joint right of action therefor which accrues to them after the eldest has attained his majority is barred as to all of them after the lapse of the statutory period.

3. SAME. *Evidence. Instructions.*

   Instructions properly limiting the plaintiff's recovery do not, in an action by remainder-men for waste, cure the error of admitting evidence of waste prior to defendant's trespasses and acts of waste barred by limitation.

4. EVIDENCE. *Saw-mill books.*

   In an action for waste in cutting timber, the saw-mill books of the defendant are inadmissible in evidence.

5. SAME. *Stumps of trees. Quality of evidence.*

   It is incumbent on the plaintiff in an action for waste in cutting timber to show with reasonable certainty what trees were severed by the defendant, and the number of stumps counted by witnesses does not tend to fix the number of trees cut by defendant.

6. LIFE TENANT. *His right to sue. Effect of same.*

   The fact that a life tenant should protect the inheritance and might sue for injuries thereto, does not affect the right of remainder-men to sue for waste committed by a third party.

FROM the circuit court of Adams county.

HON. W. R. HARPER, Special Judge.

Ogden and others, appellees, were plaintiffs, and Learned, appellee, was defendant in the court below. The opinion sufficiently states the case.

80 Miss.—49

*Ernest E. Brown* and *Green & Green,* for appellant.

1. The court erred in permitting plaintiffs over defendant's objection to file their second replication to defendant's second plea.

In order to obtain leave to file their second replication under § 692 of code, plaintiffs made affidavit that they had just cause to traverse the matters proposed to be traversed by them in their second replication, and defendant objected to the filing of the replication, because it was not a traverse, but in confession and avoidance. The court has no power to waive the affidavit provided by § 692 of code or to mitigate its terms, and the court had no more right to permit the filing of the second replication on a defective and improper affidavit than it had to permit it in absence of any affidavit. *Hunter* v. *Wilkinson,* 44 Miss., 721; *Hartford* v. *Green,* 52 Miss., 332; and *Wilmot* v. *Y. & M. V. R. R. Co.,* 76 Miss., 374.

"The court erred in sustaining the general demurrer of plaintiffs to defendant's third plea." This third plea averred that the land from which defendant cut the cypress trees was a swamp or marsh—valueless for any purpose except getting timber therefrom—and that the trees removed were sold defendant by the tenant by the curtesy, who as such had the right to sell them to defendant.

The matters alleged in this plea constituted a full defense to plaintiffs' action. Where the land upon which the trees are growing is used or fit for agricultural purposes or the like, the life tenant has no right to sell the trees. *Elliott* v. *Smith,* 2 N. H., 430; *Lane* v. *Thompson,* 43 N. H., 320; *Dorsey* v. *Moore,* 100 N. C., 41. Where however the land is as alleged in third plea a swamp or marsh—valueless for any purpose except to obtain timber therefrom and incapable of enjoyment otherwise—then the life tenant has the right to dispose of the timber or trees. 2 Minor's Institutes, pages 128 of second edition or 147 of third edition and cases there cited; *Campbell* v. *Clark,* 2 Dough (Mich.), 143; *Seager* v. *McCabe,* 168 R. A. (Mich.), 247.

In his sale of the cypress timber to defendant the life tenant reserved out sufficient for plantation purposes, and this was all the reversioners were entitled to require of the life tenant. In *Cannon* v. *Barry,* 59 Miss., 289, a part only of the land was arable, and the larger portion was swampy in character and heavily timbered, which was exactly the condition of Black Creek Tract, of which plaintiffs were reversioners. This court in their opinion in *Cannon* v. *Barry,* on page 304, after stating the right of life tenant to fell timber to redeem the land from taxes, and keep down the taxes on it in the future, further says: "As tenant for life, he has the right to do this—even for purposes of profit."

2. "The court erred in sustaining plaintiffs' demurrer to defendant's first rejoinder to second replication to second plea. The sole point involved in this rejoinder is whether there was such a right of action in the guardian of Dunbar Ogden as would cause the statute of limitations to run against the guardian and thereby bar the ward—under § 2761 of code of 1892, which reads as follows, to wit: "When the legal title to property, or a right in action, is in an executor, administrator, guardian, or other trustee, the time during which any statute of limitations runs against such trustee shall be computed against the person beneficially interested in such property or right in action, although such person may be under disability, and within the saving of any statute of limitations, and may be availed of in any suit or action by such person."

Since the enactment of above statute for first time as § 2694 of code of 1880, this court has only construed it four times to my knowledge, to wit: In *Ellis* v. *McGee* 63 Miss., 168; *Weir* v. *Monahan,* 67 Miss., 434-455; *Barr* v. *Lewis,* 71 Miss., 727; and *Nelson* v. *Ratliff,* 72 Miss., 656: In *Ellis* v. *McGee* the court held the statute of limitations is no defense because of the infancy of the ward to whom the money is due by decree, and that the case is governed by the code of 1871, as the bar is not complete by § 2694, code of 1880. In *Nelson* v. *Ratliff*

the court held the trustee was barred, and hence also were the beneficiaries, notwithstanding the delinquency of the trustee in failing to protect their interests.

*Weir* v. *Monahan* was a suit by the minor children of Monahan by their guardian as next friend to recover a debt due them, and the court held they were not barred, because the right of action was not in the guardian, but in the minors. In *Barr* v. *Lewis* the court held in effect that the minor Lewis would have been barred had not his guardian died shortly before § 2694, code of 1880, became a law, and Campbell, C. J., in his opinion made no reference to *Weir* v. *Monahan.*

We respectfully submit that the construction placed in *Weir* v. *Monahan* upon § 2761, code of 1892, violates the spirit of said section, and the repose intended to be secured by it, is opposed to a very decided weight of authority from other states, and should be overruled. If mistaken in this, I earnestly contend the principle therein announced should be at least confined to suits to recover debts due minors, brought by their guardians as next friend, as in *Weir* v. *Monahan,* and not extended to cases where the right of action is clearly in the guardian to sue in his own name to recover possession of his ward's property or for injuries done thereto.

"In consequence of his right to the possession, the guardian may, and ought, to sue in his own name for any injury or trespass to the ward's property." I, Minor's Inst., page 439 of second edition, or 478 of third edition; see, also, 9 Enc. of Pl. and Prac., 932. "An infant's property is always held by a trustee. The infant cannot hold possession, or even sue for his property without the aid of a guardian." *Fearn* v. *Shirley,* 31 Miss., 304. In *Keith* v. *Jolly,* 26 Miss., 131, it was expressly held the guardian could sue in his own name to recover possession of his ward's property. See, also, *Cocke* v. *Rucks,* 34 Miss., 108.

3. The court should never have admitted the count of the vast number of stumps without an offer by plaintiffs to

prove later they were cypress stumps, and were remains of trees removed and converted by defendant prior to January 18, 1881, and when plaintiffs rested without proving how many of the stumps counted were cypress ones, or when or by whom they were made or what number of cypress trees defendant removed before January 18, 1888, the court surely erred in overruling the motion to exclude the count of stumps, and in leaving this testimony before the jury to confuse and mislead them into the absurd verdict they found. *Keirn* v. *Warfield,* 60 Miss., 799, relied on by appellees, noted on quite a different state of facts from those here involved. The doctrine applicable to this case will be found in *Mhoon* v. *Greenfield,* 52 Miss., 434, and *Bank* v. *Montgomery,* 70 *Ib.,* 550. See, also, *Warren County* v. *Craig,* 29 So. Rep., 821.

4. "The court erred in ordering, on motion of plaintiffs, the defendant to produce his cash book and ledgers, and permitting the plaintiffs over defendant's objection to read from these books the entries therein."

Before the entries from his books were introduced defendant had testified his books threw no light upon what cypress was removed from Black Creek tract, nor when removed, and that no separate account was kept with this tract, but one account designated "Swamp," or "Black Creek Swamp," embraced all the cypress from his various tracts in Black Creek Swamp. This evidence was fully corroborated by the books when produced in obedience to the court's order. While the books showed no cypress brought from Black Creek tract, they did show large numbers of trees brought generally from Black Creek Swamp country, and the action of the court in permitting the books to be read in evidence could have no other effect than to mislead and confuse the jury and prejudice them against the defendant.

5. We further earnestly and confidently insist defendant was entitled to a peremptory instruction on the merits, regardless of whether or not the administrators of Lizzie and Nash should

have been joined. In actions for the possession of land the statute of limitation does not begin to run against the reversioner until death of life tenant, because the reversioner cannot bring a possessory action until death of life tenant. Where, however, trees are removed from the land, they become the personal property of reversioner, and his right of action accrues at once to recover the trees or their value, or for injury to his inheritance; hence the statute begins to run from the removal of the trees, and not from the death of the life tenant. *Elliott* v. *Smith,* 2 N. H., 430; *Lane* v. *Thompson,* 43 N. H., 320; *Dorsey* v. *Moore,* 100 N. C., 41, and notes to *Allen* v. *DeGroodt,* on pages 630, 632, and 635, and especially note at bottom of page 634 of 14 Am. St. Rep.

The cause of action in this case is joint, and therefore if any one of the plaintiffs was of age when the cause of action accrued, then all of the plaintiffs are barred. *Haley* v. *Taylor,* 77 Miss., 867; *Stauffer* v. *Mortgage Co.,* 77 Miss., 127; *Traweek* v. *Kelly,* 60 Miss., 652. See, also, *Sullivan* v. *Davis,* 29 Kan., 28.

In sixth instruction the court erroneously told the jury, "It is not incumbent upon the plantiffs to prove the precise number of trees cut and removed from said plantation during the period named in instructions one and two." The cases relied upon by counsel in lower court to sustain the above were *Carberry* v. *Burns,* 68 Miss., 585, and *N. J. & C. R. R. Co.* v. *Bolls,* 62 Miss., 50. *Carberry* v. *Burns* bears no analogy to the case at bar. In *R. R. Co.* v. *Bolls* the court did not instruct the jury it was not incumbent upon plaintiff to prove the number of cross ties taken, but sustained a verdict in his favor on the ground he had furnished the data for a verdict, and defendant's employes who could give the exact number refused to do so. The language of the court is as follows: "The exact number could readily have been given by the railroad employes, but since they failed to give it, it was certainly competent for the jury to approximate it by an estimate, which they did, the

data for that estimate being given by the witnesses for the plaintiff." The trial court having held that the cause of action accrued as to each tree from time of its removal, plaintiffs were entitled to recover only for that number of trees they proved were removed and converted prior to January 18, 1888; hence it was erroneous and misleading to instruct that plaintiffs did not have to prove the number of trees so removed. *Mhoon* v. *Greenfield,* 52 Miss., 434; *Sullivan* v. *Davis,* 29 Kan., 28; *Bank* v. *Montgomery,* 70 Miss., 550; *Warren County* v. *Craig,* 29 So. (Miss.), 821.

*Smith, Hirsh & Landau* and *Pintard & Ratcliff,* for appellees.

It is shown by the agreed statement of facts that W. F. Ogden, Sr., a tenant by the curtesy, died on April 26, 1899, and we submit there is strong authority for the contention that, as the right of possession of these appellees did not finally accrue until the death of said tenant by curtesy, the statute of limitations did not run against them until that date.

We respectfully maintain the appellees had a choice of remedies. "They might have sued for and recovered the value of the timber severed from the land, or they may maintain their action for the injury to the inheritance." *Dorsey* v. *Moore,* 6 S. E. Rep., 270 (s.c., 100 N. C., 41).

The reversioner can never determine the full extent of the injury to his inheritance until he enters upon the possession thereof, and he can only then finally determine the extent of the damage to his estate for which the life tenant is responsible. It may be true that when timber is severed from land it becomes personal property, and the right to seize that property or recover its value vests in the reversioner, but there seems no valid reason why the latter should be compelled to bring successive suits every time an act of trespass or waste is committed, and then, finally, when in the enjoyment of his estate, bring another action, and thus not only harass the tenant

by the curtesy, but subject himself to the responsibility and annoyance of a multiplicity of suits, when he can obtain full reparation in one suit after his title is unquestionably vested and his possession unchallenged. The trespasser acts at his peril, and is not injured by the enforcement of this rule. He can never be called upon to account for more injury than he committed, and it is only when the full extent of this injury can be easily ascertained, that the responsibility rests upon the owner to institute an action. *Dorsey* v. *Moore, supra,* 6; *Disprow* v. *Westchester Hardware Co.,* 58 N. E. Rep., 519; *Dwight* v. *Railroad Co.,* 132 N. Y., 199; *Lowry* v. *Rowland,* 16 So. Rep., 88.

It may be argued that the declaration shows that this is simply a suit for the value of the personal property, to wit: 30,000 cypress trees of the value of $2.50 per tree. It is well settled in this state that a court will not consider the mere forms of pleadings.

Section 671 of the code of 1892 (§ 1536 of the code of 1880) abolishes all forms of actions. *Evans* v. *Miller,* 58 Miss., 120.

The declaration on its face also charges that the trespasses complained of, to wit, the cutting and removal of the trees, caused the plaintiff to be "greatly injured, prejudiced and aggrieved in their reversionary estate and interest in and to said above described lands to the damage of said plaintiffs, $75,000."

The declaration, therefore, on its face, shows that the reversionary estate and interest was damaged $75,000.

The appellant contends, first, that the court erred in sustaining the demurrer of appellees to the third plea of appellant. This plea was in effect as follows:

"That the portion of Black Creek plantation, upon which was situated the cypress trees cut and carried away were low, marshy lands often covered with water and overflowed by the Mississippi river, and that because thereof, and because of their said low, wet, marshy condition, said lands were useless and valueless for agricultural or for any other purpose, save the

one purpose and use of getting and cutting timber thereon, and that all the cypress trees cut and carried away were purchased by the defendant for $3,000 cash from W. F. Ogden, Sr., the tenant by curtesy, and that such cutting and carrying away occurred after the purchase, and that said tenant by curtesy had the right to sell said cypress trees."

The decisions in opposition to this view are abundant and convincing. *Dorsey* v. *Moore, supra;* Tiedman on Real Property, "Waste in respect to Trees;" 1 Washburn on Real Property, 3d ed.; *Wilds* v. *Layton,* 1 Del. Ch., 226; *Johnson* v. *Johnson,* 2 Hills Ch., 277; *Clarke* v. *Holden,* 7 Gray, 8; *Webster* v. *Webster,* 33 N. H., 18; *Clemence* v. *Steere,* 1 R. I., 272; *Davis* v. *Gilliam,* 40 N. C., 308; *Davis* v. *Clark,* 15 Mo. App., 515; *Smith* v. *Smith,* 100 Ga., 106; 31 S. E., 135; *Lunn* v. *Oslin,* 33 S. W. Rep., 561; *Williams* v. *Jones,* 43 W. Va., 562; 27 S. E., 411; *Wilkinson* v. *Wilkinson,* 59 Wis., 557: *Dishe* v. *Dishe,* 45 Neb., 110; 63 N. W., 368. This court in *Cannon* v. *Barry,* 59 Miss., 303, announces the rule as follows: "With us, speaking generally, it may be said that nothing will ordinarily be held to constitute waste, which is dictated by good husbandry and promotes rather than diminishes the permanent value of the property as an estate of inheritance."

The final objection to the pleadings made in the motion for a new trial, was the action of the court below in sustaining appellee's demurrer to the first rejoinder to the second replication to the second plea of defendant. By this rejoinder defendant undertook to interpose as a defense, after showing the respective ages of the plaintiffs then living, that on April 19, 1894, the clerk of the chancery court of Jefferson county appointed W. F. Ogden guardian of the fourth plaintiff, Dunbar H. Ogden; that this appointment was approved by the chancery court, and that Ogden continued as such guardian until his death, April 26, 1899, and that more than six years had elapsed after the appointment of said guardian, and after the cause of action mentioned in the declaration had accrued. The ages

of the plaintiffs being stated in the rejoinder, it was evident that as they were minors when the right of action accrued, certainly W. F. Ogden, Jr., Annie E. Sears, and Estelle Ogden were not barred, and we do not presume that such a proposition would be seriously contended for here. If it is, it will be in opposition to the decisions of this court, since guardianship does not confer title. *Tippin* v. *Coleman,* 59 Miss., 641; *Masters* v. *Dunn,* 30 Miss., 264; *Bull* v. *Dagenhard,* 55 Miss., 602; *Weir* v. *Monahan,* 67 Miss., 434; *Wingfield* v. *Virgin,* 51 Ga., 139.

The eighth ground of the motion for a new trial was the objection to the testimony of the two Taylors and McGraw, as to the number of stumps. This evidence was pertinent and proper under any circumstances, even if there was no authority to support the action of the court below. *Keirn* v. *Warfield,* 60 Miss., 799.

Argued orally by *E. E. Brown* and *Marcellus Green,* for appellant, and by *Joseph Hirsh,* for appellees.

TERRAL, J., delivered the opinion of the court.

In 1878 Elizabeth Ogden departed this life intestate, seized of Black Creek plantation, containing more than 2,200 acres of land, lying north of Coles creek, and near the Mississippi river, in Jefferson county. She left surviving her her husband, W. F. Ogden, Sr., who was entitled to a life estate in said lands as tenant by the curtesy, and who died in 1899, and six children, entitled to said estate in reversion. Two of said children died in infancy, leaving the four others to inherit their interest in said lands. The four children of Mrs. Elizabeth Ogden, in June, 1900, brought suit against appellant, Learned, for trespass on the said Black Creek plantation in cutting, felling, removing, and destroying between January 1, 1879, and the commencement of this suit 30,000 cypress trees standing and growing upon said land, of the value of $2.50 per

tree, aggregating $75,000, to the great injury of their inherit-
ance.    They recovered a verdict of $68,267.92.    Upon a motion
by appellant for a new trial the court required appellees to
remit one-half the amount of said verdict, and thereupon en-
tered a judgment against appellant for $34,133.96, and from
that judgment Learned appeals.

As a new trial must be granted, it will be unnecessary to
notice in detail the pleadings or the evidence.    While the law
of waste, as established in England, is modified by its trans-
plantation to this country to suit the conditions of a new and
uncleared country, and to allow a tenant for life to open wild
lands for necessary cultivation or to change the course of agri-
culture without being liable for waste, yet the cutting down of
trees for his mere profit is here, as there, considered waste.
A tenant by the curtesy, as an incident to his estate, may take
reasonable estovers of all kinds, and he may cut timber to pay
taxes, or to improve the land, and when so cut it belongs to the
tenant, and not to the reversioner.    But the cutting down by
the tenant of trees for sale is waste, and the felling of trees by
the tenant or others for a sale of them is an injury to the in-
heritance, for which the reversioners have their appropriate
action.    Trees, when felled, or severed from the soil, become
personal property, in which the tenant in possession has no
interest when cut for profit; and the reversioner may maintain
his action for the possession of the property, or for damages
therefor, in the same manner and with like effect as if he were
the owner of the estate in possession.    A tenant by the curtesy
in possession has no authority, as such, to represent the rever-
sioner, or to bind him or his estate in any manner whatever.
Notes to *Allen* v. *DeGroodt* (Mo. Sup.), 14 Am. St. Rep., 628
*et seq.* (s.c., 11 S. W., 240) ; notes to *Miles* v. *Miles,* 64 Am.
Dec., 367 *et seq.;* 4 Kent, Comm., 74 *et seq.*    From these views
of the subject it results that the sale of the cypress trees grow-
ing on Black Creek plantation by W. F. Ogden, Sr., the life

tenant, to the defendant, Learned, of date February 8, 1881, was in every respect void, and of no force whatever.

As the action of the plaintiffs below is a joint action, we think the court correctly ruled that the plaintiffs were entitled to recover only for the injury to their inheritance inflicted upon it by the defendant prior to the 18th day of January, 1888, when the eldest of the plaintiffs became twenty-one years old, because it is perfectly manifest that for all injuries done to the inheritance since the 18th day of January, 1888, the plaintiffs are barred of all recovery by the statute of limitations relating to actions. A consideration of the record discloses the fact that the evidence of the felling of trees upon Black Creek plantation was not confined to proof of the injuries inflicted by Learned between February 18, 1881—when it may be assumed, if specific proof justified it, that Learned commenced cutting timber upon the said lands—and January 18, 1888, as to all trespasses after which time plaintiffs were barred of remedy against him; but said evidence extended to any and all injuries done by any and all persons prior to February, 1881, and since January 18, 1888, aggregating many years of trespass upon said plantation, for which Learned was not liable in this suit. The court, in its instructions, correctly confined plaintiffs to a recovery for wrongs done by Learned or his servants to their inheritance after February 8, 1881, for there is no pretense upon the evidence that he trespassed upon Black Creek plantation before that time, and before January 18, 1888, when the eldest of the plaintiffs came of age, as all trespasses committed by him since said time are barred. And yet evidence of trespasses committed before February 8, 1881, and since January 18, 1888, was freely and abundantly submitted to the jury, to the great detriment of the defendant. While the instructions put a proper limit upon the period during which plaintiffs could recover, the evidence relating to the cutting of the trees upon the lands to which plaintiffs were entitled in reversion extended

to trespasses manifestly committed during a course of many years before and after the time for which defendant was liable to plaintiffs in this action, and for which it is evident from the record that the defendant is not liable in this action. The sawmill books of Learned furnished no evidence to determine his liability in this suit, and were not admissible in evidence, and the stumps of trees counted by McGraw and the Taylors in nowise tended to fix the number of trees cut by Learned, or his servants under his direction, during the period for which he may be made responsible in this suit. In order that plaintiffs may have a recovery from the defendant, it is necessary for them to show with reasonable certainty what trees were severed by him or his servants from the soil, or what other injury was done by him or his servants to their inheritance, during the period for which the bar of the statute does not apply. The sum here recovered is largely in excess of any sum justified by the evidence.

The fact that Ogden, the life tenant, should have protected the inheritance from injury, and might have sued for the injuries of others thereto, does not affect their right of action. Nor does his becoming the guardian of his minor children put the statute of limitations into operation so as to affect their right of action, for it is only where the legal title to the property is in the guardian that the statute of limitations begins to run. The legal title here was in the plaintiffs.

The verdict and judgment are contrary to the law and the evidence, and must be reversed.

*Reversed and remanded.*