# CHARLESTON.

THE PROVIDENT LIFE & TRUST CO. *v.* WALTER WOOD.

Submitted May 6, 1924.    Decided May 20, 1924.

1.  PARTITION—*Respective Interests of Cotenants Should be Ascertained Before Decreeing Partition in Kind or Directing Sales.*

    In a suit to partition land, the court should ascertain the respective interests of the co-tenants before either decreeing a partition in kind or directing a sale. (p. 526).

2.  SAME—TENANCY IN COMMON—*Co-tenant May Not Cut and Remove Growing Timber Without Consent of Co-owner; Cutting and Removal of Timber is Waste; Court of Equity May Not Permit Cutting and Removal of Timber Before Partition Unless Imperatively Necessary.*

    A co-tenant has no right, without the consent of the other co-owner, to cut and remove the timber growing upon a large area owned in common; to do so is waste for which he is responsible; nor may he confer that right upon another; nor in a suit for partition may the court do so by sale, in advance of determining the relative interests of the owners, unless imperious necessity to prevent great loss requires such exercise of judicial power; and it is extremely doubtful whether a court of equity may even then do so. (p. 528).

3.  SAME—*Decree Authorizing Cutting and Removal of Timber Held Unwarranted.*

    A case in which such exercise of power is unwarranted. (p. 533).

Appeal from Circuit Court, Mingo County.

Action by the Provident Life & Trust Company against Walter Wood. From a judgment for plaintiff, defendant appeals.

*Reversed and remanded.*

*Holt, Duncan & Holt,* for appellant.

*Fitzpatrick, Brown & Davis, Campbell & Campbell, Townsend, Elliott & Munson,* and *Conlen, Brinton & Acker,* for appellee.

MEREDITH, PRESIDENT:

Defendant appeals from a decree entered July 17, 1923, providing for the sale of all the merchantable timber 16 inches and up in diameter on two tracts of land in Mingo County, aggregating about 9400 acres.

On October 7, 1914, Provident Life & Trust Company of Philadelphia and Edward R. Wood, Jr., as Executors and Trustees under the last will and testament of Stuart Wood, deceased, as plaintiffs, filed their original bill in which they allege that Stuart Wood died March 2, 1914; that at that time he was the holder of the legal title to 107 tracts of land, aggregating between 50,000 and 60,000 acres in Mingo County, in trust for himself and the defendant Walter Wood, and that he was seized and possessed in fee simple of 63.55% undivided beneficial interest therein and the defendant Walter Wood the remaining 36.45% beneficial interest, except as to tract No. 84, containing about 1738 acres, in which tract Stuart Wood was seized of 59.5% undivided beneficial interest, and the defendant Walter Wood the remaining 40.5% undivided beneficial interest; that Stuart Wood left his last will and testament which was duly probated in the office of the Register of Wills in and for the City and County of Philadelphia, Pennsylvania, an authenticated copy of which was admitted to probate in Mingo County, West Virginia; that the plaintiffs were named therein as executors and trustees and were duly qualified as such before the said Register of Wills, and also before the County Court of Mingo County, West Virginia; that the legal title to said lands is now vested in the plaintiffs, in their capacity as executors and trustees under said will; that by the provisions of the will the whole of the said estate, except certain personalty bequeathed to others, is devised to plaintiffs in trust, to use in their uncontrolled discretion, any portion of the principal or income of the estate for the purpose of promoting or developing any of the property interests of the said estate; that they are given power to hold any of said property or they may dispose of the same to the best advantage and reinvest the proceeds; that they may sell and convey or exchange any of the testator's lands; that by virtue of the will and

upon the trusts therein set forth they "are seized and possessed
of the respective undivided beneficial interests of which the
said Stuart Wood died seized and possessed in." said tracts
of land, and by virtue of the will they "have, full, absolute
and present power of sale, disposal, exchange and conveyance
of the said respective undivided beneficial interests of the
said Stuart Wood, deceased, in the said lands"; that the
lands can not be partitioned and divided in kind without
serious prejudice and injury to the owners thereof; that they
were purchased by Stuart Wood for himself and his cestui
que trust chiefly on account of the value of the coal, oil and
gas and other minerals contained therein, and partly on ac-
count of the timber standing thereon; that all of said lands
contain coal, and plaintiffs believe and aver that they also
contain oil and gas as well as other minerals; that they are
located in a section of rough and mountainous country; only
between five and ten per cent thereof is suitable for cultiva-
tion; they contain no more building ground than is suitable
for mining camps, railroads and sidings for the mining and
carrying away of the coal and other minerals; that the seams
of coal in different parts of any one of said tracts vary in
number, thickness, quality and position with respect to water
level, and the mining conditions vary in the different sec-
tions; that some of the tracts are valuable as affording ingress
and egress to and from others of said tracts which would be
otherwise cut off from access to railroads or to valleys where
railroads can be built; that it can not be known certainly
what lands contain oil and gas sands; nor can it be determined
without the actual process of mining what seams or tracts
of coal may be economically mined; that none of the lands
were purchased or intended to be held for agricultural pur-
poses, but their chief and almost their entire value is in
the minerals underlying the surface; that:

> "The timber formerly standing on the tracts and
> parcels of land hereinbefore mentioned has been almost
> entirely removed. The timber now standing thereon
> (save and except on Miller's Creek, in said County) is
> only sufficient for the mining and development of the
> minerals underlying the said land. The said lands in-
> clude a boundary of timber on Miller's Creek, which
> timber is ripened for marketing, and the timber on

said tract can be more economically marketed, and has greater value as a whole than would be the case were the tract of land on which the said timber stands divided by partition in kind. The lands on which the said timber on Miller's Creek stands are underlaid with valuable seams of coal.

"Many of the tracts and parcels of land hereinbefore mentioned and described lie adjacent one to the other, thus forming considerable boundaries of land. The same are of greater value when taken as a whole than would be the aggregate of the value of the separate parcels thereof should the same be dismembered by partition in kind.

"For these and other like reasons, the plaintiffs aver that the tracts and parcels of land hereinbefore described are not susceptible of partition in kind without great injury to the interests of those entitled to said lands; and that the sale of the said lands and the division of the proceeds arising therefrom will give to such parties greater value than the division thereof in kind, and that the interests of the owners thereof would be best promoted and subserved by such sale and division of the proceeds.

"The said Stuart Wood, in his lifetime, held the legal title to the tracts and parcels of land hereinbefore mentioned, and described, as well also as other tracts and parcels of lands heretofore disposed of in the lifetime of the said Stuart Wood, in trust as hereinbefore set forth, with full power and authority from the defendant Walter Wood to manage and control the said premises, to sell part or all said premises, to purchaser, or purchasers, upon such terms and for such consideration as to the said Stuart Wood should seem meet, with power and authority to make exchange of all or portions of said premises for other tracts of land, or interests in such other tracts, with power to make such disbursements as he might deem wise for taxes, repairs, costs of improvement, legal expenses, including sums paid in litigation and purchase of conflicting titles, or expended on or for roads, surveys, conveyances, development, or other expenses incurred on account of said lands, with the promise on the part of his cestui que trust to reimburse him for such expenditures. These plaintiff's aver that the said Stuart Wood, in his lifetime, did manage and control the said lands; he made sales of portions thereof, leases of other portions thereof; he sold standing timber therefrom; he made disbursements on account of

taxes, repairs, cost of improvement, legal expenses, including sums paid in litigation and purchase of conflicting titles, for roads, surveys, conveyances, development and other expenses incurred on account of said lands; and he made disbursements to the defendant Walter Wood and to himself on account of the proceeds derived from said lands.

"There remains unsettled and undetermined the accounts of the dealings and transactions of the said Stuart Wood, in relation to the said lands, and the plaintiffs, The Provident Life & Trust Company of Philadelphia, and Edward R. Wood, Jr., in their capacity as Executors of and Trustees under the last will and testament of Stuart Wood, deceased, aver that it is impossible for them to make settlement of such accounts with the defendant Walter Wood, because they say that the defendant Walter Wood makes the claim and contention that he is the owner of a greater beneficial interest than is hereinbefore in this bill of complaint alleged to be the true beneficial interest therein owned by the said defendant, Walter Wood; that is to say, the said Walter Wood claims and contends that he is the owner of fifty per centum undivided beneficial interest in all of said lands:

"The plaintiffs further state and aver that in their capacity as executors of, and trustees under, the last will and testament of Stuart Wood, deceased, they have made disbursements on account of taxes, legal expenses, including sums paid in litigation and purchase of conflicting titles, surveys, development, and other expenses incurred on account of said lands; that their accounts of such dealings and transactions remain unsettled and undetermined; that it is necessary before there can be any settlement of the accounts of Stuart Wood in relation to said lands, and of the executors of, and trustees under, his last will and testament since his death, that there should be a determination and adjudication of the amount of the undivided beneficial interest owned by the said Walter Wood in the said lands.''

That plaintiffs have always been and are now ready and anxious to settle said accounts and transactions but have been wholly unable to do so on account of the contention of the defendant above referred to; that they "are entitled to demand and have partition of the lands hereinbefore described as between themselves upon the one hand and the defendant, Walter Wood, upon the other hand''; that if they are

divisible in kind, the court will make partition; that if they are not, the court will decree a sale thereof and partition the proceeds; that the court, "having taken jurisdiction for the purpose of the partition of the said lands, or of the proceeds thereof, will, as incidental to such suit for partition, make settlement of the accounts of the dealings and transactions of the said Stuart Wood in his lifetime, and of these plaintiffs" as his executors and trustees in reference thereto. Plaintiffs pray for partition in kind, if that can be had; if not, then a sale thereof and division of the proceeds; that said accounts may be settled and they be granted general relief.

Nothing was done in the cause until August 16, 1919, at which time counsel signed a stipulation which after reciting the pendency of this and another suit in the same court for the partition of certain other lands and to secure an accounting and that the plaintiffs are about to file in the court of Common Pleas for the City and County of Philadelphia "the account of Stuart Wood, who was in his lifetime trustee for the said Walter Wood as to the interest of the said Walter Wood in the said lands", to avoid unnecessary litigation and expense, sets forth:

(1) That the interest of Walter Wood and also the interest of the executors and trustees under Stuart Wood's will, in the lands in the two bills of complaint set forth, or in any other lands in West Virginia, shall be determined by the court of Common Pleas of the City of Philadelphia upon the said accounting to be filed by the said executors, or an auditor to be appointed by that court, subject to the right of either interest to appeal, and subject further to the determination of any proceedings now pending or hereafter brought on behalf of the so-called Dinge interests for any accounting or reconveyance in respect to any of said lands.

(2) That the final decision of the Pennsylvania court "shall be and is hereby accepted by both the parties hereto as binding and conclusive in the partition and division of the lands in said bills of complaint mentioned or described, or as respects division of the proceeds, and avails thereof in the event of all or any part thereof being sold under the direction and decree of the circuit court of Mingo County, West Virginia."

(3)   That upon such decision fixing the respective interests of the parties in said lands, a consent decree shall be entered in said two causes pending in the circuit court of Mingo County, adjudicating such respective interests in accordance with such decision.

(4)   That plaintiffs' prayer in their bill of complaint that an account of the dealings of the plaintiffs in their capacity of executors of the last will and testament of Stuart Wood since his death, with relation to said lands, be taken and stated by the circuit court of Mingo County, be and the same is withdrawn as to such accounting, "the prayer of the plaintiffs for partition as therein contained to remain in full force and effect."

(5)   "That all proceedings looking toward a partition of the lands in said Bill of Complaint described, shall upon the filing by the said Walter Wood of his answer in said proceedings, be and the same are hereby suspended and held in abeyance until the final accounting and ascertainment of interests by the Courts of Pennsylvania as hereinbefore specified.

This stipulation shall not affect any question which now or hereafter arises in or many be presented to the Circuit Court of Mingo County, West Virginia, in the two cases above mentioned, nor the right of said court to pass on and adjudicate the same, except the question of the respective interests of Stuart and Walter Wood in the lands aforesaid or the proceeds thereof, and the proper settlement and adjudication of the accounts of the said Stuart Wood as trustee, and of his executors and trustees since the time of his death."

(6)   That the executors will file an account in the said Common Pleas Court of the transactions of Stuart Wood, as trustee of said West Virginia lands, and of his said executors and trustees in respect to such lands within twenty days from the date of the stipulation.

On August 16, 1919, the stipulation by an order was filed, spread upon the record and it was decreed that "this cause be and the same is hereby stayed and held in abeyance until the final accounting and ascertainment of interest in the property mentioned in the bill and proceedings in this cause be had by the Courts of Pennsylvania, as set forth in the said stipulation."

No further step was taken in this cause until April, 1920, when plaintiffs filed their amended bill seeking immediate sale of all of the merchantable timber upon tract No. 99, and tract No. 6, located on Miller's Creek and Pigeon Creek, tributaries of Tug Fork of Big Sandy River, and as grounds therefor allege: (a) That plaintiffs, in their fiduciary and trust capacities, have since the death of Stuart Wood, been and are now in the exclusive possession of all of said lands, and have during that time been and are now exerting their best endeavors to manage and protect said lands, so as to best conserve the interests of the owners; that although defendant has repeatedly been requested to co-operate with plaintiffs in their endeavors, he has failed and refused and still refuses to do so; (b) That the chief value of said two tracts is in the timber trees of oak, poplar and other varieties of wood standing and growing thereon; that the larger poplar and oak trees so situate, and which are the more valuable varieties, have long since grown to maturity and are now rapidly deteriorating and falling, and are liable to serious injury from forest fires; many are dying in the top and are rotting; worms are attacking many of the decaying trees and will in a short time seriously damage them and cause them to be worthless; that the merchantable timber is of proper size and condition for cutting and if it is permitted to longer stand, much of the most valuable portions will be lost from decay, from falling and from forest fires; that there is a strong and active market and demand for said timber and it can be sold at an advantageous price; that when the ripened and merchantable timber is removed, there will be a very much more rapid growth of the younger timber, and in a few years, if such growth be speeded by the removal of the ripened timber a second crop can be harvested; that it is to the best interests of the owners of the lands that the ripened and merchantable timber be immediately sold and removed and that failure to do so will result in serious injury to the owners; that defendant refuses to join the plaintiffs in the sale or removal of the timber or to take any action in relation thereto; that the sale of the timber must necessarily be made as a whole in order to bring the value thereof, and a sale of an undivided interest thereof could only be made at a ruinous sacrifice.

They exhibit with the amended bill a copy of the stipulation referred to, but aver that it provides that it "shall not affect any question which might thereafter arise or be presented to the said circuit court of Mingo County, West Virginia, in this cause", nor the right of that court to pass upon and adjudicate the same, excepting only the questions of the respective interests of the parties in the lands or proceeds and a proper settlement of the accounts of Stuart Wood and of his executors; that the interests of the parties in the lands are as stated in their original bill; that the litigation in the Pennsylvania courts in reference to such interests remains undetermined; that plaintiffs have used every endeavor to speed the same to final determination, but that a considerable period of time must necessarily elapse before such determination can be had; they ask for the same relief as prayed for in their original bill except as modified by their stipulation; that the merchantable timber on the two tracts mentioned be sold, and the purchase price divided in proportion to their respective interests as set out in the original bill, except that the division of 13.55% of the same be withheld until the controversy in respect thereto be settled.

At August Rules, 1920, defendant filed an answer to the original bill, claiming an undivided 50% interest in the properties; denies that plaintiffs have a right to have the lands partitioned or sold; denies that the interests of the parties will be promoted by sale and division of the proceeds; and shows that the accounts mentioned in the bill are unsettled. His demurrer to the amended bill was overruled and at March Rules, 1922, he filed an answer thereto, and denies the material allegations thereof; relies upon the stipulation mentioned as a suspension of plaintiffs' right to have a sale of any part of the property, and denies there is any such waste of the timber as alleged, but avers that the alleged danger from forest fires is no greater than it has been for many years past; he denies there is any strong and active market, and avers that if the timber should be sold upon the then existing market it would result in great sacrifice. There are other matters mentioned in the answer to which we need not refer.

Depositions were taken as to the condition of the timber.

Upon final hearing the court found that the two tracts of land are not susceptible of partition in kind, with due regard to the interests of the beneficial owners; that the timber thereon is likewise indivisible in kind with due regard to the interests of the owners and that a sale of their undivided interests in the lands or the timber thereon could not be made with due regard to the interests of the owners; that the merchantable timber is ripened and of proper size for cutting and marketing; that the large poplar and oak, the most valuable varieties, have long since grown to maturity and are now rapidly deteriorating and falling and liable to serious injury from forest fires; many are dying in the top portions and the worms are attacking many of the decaying trees and will seriously damage the trunks and cause them to become worthless; that when the merchantable timber is removed there will be a more rapid growth of the younger timber; that it is to the best interests of the owners that the ripened and merchantable timber be immediately sold and removed and failure to do so will result in serious injury to the owners; that plaintiffs are entitled to the relief prayed for in their amended bill. Special commissioners were appointed to sell all the timber on said two tracts measuring 16 inches and over in diameter; the purchaser to have ample time to cut, manufacture and remove it, with the right to manufacture and ship it at any suitable location or locations, with the right to build roads, haul-ways and tramways for that purpose. Any proposal received by the special commissioners to be accompanied by a check for a specified amount, any contract of sale to be approved by the court.

A number of grounds are urged for reversal:

First. That in the face of the written stipulation, the plaintiffs have no right to a partition in kind or by sale, of any of the lands mentioned in advance of the decree of the Pennsylvania court determining their respective interests.

Second. That no such sale as that decreed can be made until the interests of the respective parties in the subject of sale be ascertained.

Third. That the court erred in its finding of facts as stated.

Fourth. That it being shown that plaintiffs are in exclu-

sive possession of the lands and are the owners of large undivided interests therein, and that no one is interfering, they themselves have the power to prevent any waste.

Fifth. That any sale should be at public auction.

Plaintiffs as grounds for upholding the decree urge:

1. That they, as personal representatives of Stuart Wood, deceased, are holders of the legal title in trust for themselves and Walter Wood, and as such are entitled to execute the trust reposed in Stuart Wood by the defendant, under section 6, chapter 132, Code; that the original bill was filed for the purpose of winding up that trust, settling the disputed accounts, and as a measure of relief, securing a distribution of the trust assets by partition thereof by sale and division of the proceeds; that the partition sought is merely incidental to the other relief prayed for; and that equity has independent jurisdiction to authorize a sale of matured timber, where, as in this case, the legal title and the powers of the trustees were questioned by a hostile beneficiary and they come seeking advice and instructions as to the execution of their trust.

The agreement creating the trust in Stuart Wood is not in the record. We do not know its terms. It is only incidentally referred to in the pleadings. The defendant claims it was a personal trust and ceased upon Stuart Wood's death; that the plaintiffs hold, as to defendant's interest, the naked legal title only and have no authority to make sale or other disposition of his interest in the lands. We find it unnecessary to determine that question. But plaintiffs in their pleadings do not rely upon that trust; they come into court, not for the purpose of asking the court's advice and direction as to their duties, but their main purpose is to obtain a partition of the lands by sale; the necessity of a settlement of their decedent's and their own accounts as trustees in relation to the lands is pleaded "as incidental to such suit for partition". But that is not all; by written stipulation they withdrew from the jurisdiction of the court in this cause all matters of that settlement and agreed that these should be determined by the Pennsylvania court; that the Mingo Circuit Court should accept as binding the final result as ascertained by the Pennsylvania court's decision. We can not see much, on which to maintain jurisdiction in the circuit court of Mingo

County on the ground of an alleged trust relation between Stuart Wood or his executor and the defendant. We repeat, the real and main purpose of plaintiffs, as disclosed by their original and amended bills, was and is to obtain a partition of these lands,—not to ask advice of the court in the execution of their trust, for this they in no wise do; nor for the purpose of winding up their trust, for this is nowhere asked. except as a mere incident in ascertaining the respective interests of the parties in the lands. If the stipulation be binding, and no one doubts that it is, the Mingo Circuit Court could not settle either of the trust accounts; that matter was expressly withdrawn from its consideration. We find nothing in the record justifying the decree based upon any trust relation. The case did not proceed upon, nor was it based upon that theory; so far as we can see, the original bill is one purely for partition; the averments of the necessity of an accounting in order to ascertain the interests of the parties have but that one single purpose. The amended bill introduces but two new matters: (1) that the plaintiffs are in the exclusive possession of the lands, and (2) that the timber should be sold in order to prevent waste. They no more rely upon the trust in their amended than they do in their original bill. It will be seen that under the stipulation the partition suit was to be stayed upon the filing of defendant's answer. It is alleged in the amended bill that he had not at that time answered the original bill and that is true; so technically, the filing of the amended bill was not in violation of the stipulation. However, the stipulation became operative immediately upon its execution in so far as it affected a settlement of the trust accounts and the ascertainment of the interests of the parties in the lands. Soon after the amended bill was filed, defendant answered both bills; then the stipulation became effective to its full extent. What is that? What may the circuit court of Mingo county do under that stipulation in advance of the finding of the Pennsylvania court? If that agreement is binding, and no one questions that it is, nor do we think they could successfully do so, then there can be no partition in this cause until the final decree of the Pennsylvania court. The interests of the parties is to be determined by that decree; of course, the land could not be partitioned or

divided in kind until the relative interests of those sharing in the partition is ascertained. It necessarily follows that this land can not be divided in kind between plaintiffs and defendant until final decree of the Pennsylvania court fixing their interests. Indeed, the plaintiffs do not deny that proposition. Nor do they deny generally that land can not be partitioned by way of sale and division of the proceeds until the respective interests of the parties be determined. That seems to be a well settled proposition. *Tompkins* v. *Kyle,* 95 W. Va. 584, 122 S. E. 150; *Croston* v. *Male,* 56 W. Va. 205, 49 S. E. 136, 107 Am. St. Rep. 918·

The parties would not know how much to bid in order to protect their interests; in many instances the owner of an interest might want to apply his portion of the proceeds upon the purchase price in case he should buy the whole and in most cases it would be proper for the court to allow this to be done; but if his share is not fixed in advance of the sale, certainly in advance of confirmation, it would be difficult, if not impossible, to apply his share on the purchase price.

It would seem that since the court could not divide the land in kind nor sell it until the interests are determined, there is little left under the stipulation for the court to do. Of course, there might be certain preliminary work that could be done by way of surveys, tests of the minerals or ascertaining data as to the character of the lands, timber and minerals, their location and accessibility, and the like, all of which would be of value to the court and the parties in arriving at a decision as to whether the land could be divided in kind or whether it should be sold when the Pennsylvania decree is finally exhibited in the cause. We see no objection to these and such other matters as may be pertinent being ascertained in advance; they would be merely preliminary, but nevertheless quite important. As there is a very large acreage involved it would require considerable time and effort to obtain this data; but beyond doing that, we can not see what further steps the court could take toward speeding the partition until the interests of the parties are ascertained.

2. But plaintiffs urge as a second ground for sustaining the decree that the court could sell the timber in order to prevent waste. That courts of equity in partition suits may

in certain instances prevent waste is true. If one co-tenant were committing waste to the injury of his co-tenant he may be enjoined, or called upon to account under section ·14, chapter 100, Barnes' Code, 1923. *Williamson* v. *Jones*, 43 W. Va. 562, 27 S. E. 411. But the case here is not of that character. Plaintiffs' complaint is not that defendant is guilty of actual waste, but merely that he will not co-operate with them in staying waste. There is nothing pointed out that he could do, but to consent to a sale of the timber. Since he is unwilling to do that, and assuming that no partition by way of sale can be had until the interests of the parties are determined, plaintiffs would justify the decree of sale of the timber to prevent its waste under the authority of *Williamson* v. *Jones, supra,* where in point six of the syllabus the court said:

> "Where there is a life tenant, and timber or other thing, part of the realty going to loss, and imperative need calls for it, equity may cause it to be cut or otherwise secured for the remainder-man or the reversioner. Equity has power to do so, if it do no harm to the life tenant, or he be compensated."

But the court was there speaking of the rights of a remainder-man, not a co-tenant. The rights of a remainder-man are quite different from those of a co-tenant; he has no right to possession. He can not set foot on his own land so long as the life-tenant lives, unless the life-tenant consents; it necessarily follows that he can not enter to prevent permissive waste, for example, to recover ripe or decaying timber or to bore for or save his oil from drainage through wells on adjacent lands. Neither can he maintain partition. Under these circumstances, equity may grant relief. But where the land is held in co-tenancy the situation is quite different. The co-tenant may enter and prevent waste. Each co-tenant has the right of possession and to the reasonable enjoyment of the land in some of the ordinary methods of reaping profits from property of like character under like circumstances. "Thus, if timber standing on the land is of proper size and condition for advantageous sale, either of the co-tenants, it is said, may lawfully proceed to cut and sell it; for in so doing he makes no unusual use of the real estate of which he is a

tenant in fee." *McDodrill* v. *Pardee & Curtin Lumber Co.,* 40 W. Va. 579, 21 S. E. 878, citing Freeman, Cotenancy, §251. It might be inferred from the language quoted that one co-tenant could cut or sell all the timber. However, the cases cited by Freeman in support of the statement do not go that far. He has no right to injure his co-tenant. For instance, if he takes more than his share of the product of an open mine, he may be compelled to account. *McCord* v. *Mining Co.,* 64 Cal. 134. As stated by Judge Brannon in *Williamson* v. *Jones, supra,* "Those acts which would be waste in a tenant for life would be between tenants in common." It is quite clear that a tenant for life could not sell or cut all the timber in this case decreed to be sold; nor could the plaintiffs, as co-tenants, do so, without being guilty of waste. Hence the decree can not be justified on the theory that the court directed its officers to do what either co-tenant might do. A removal of all the timber 16 inches and up in diameter would be an unusual use of the land and would be waste, whether done by a life or a co-tenant.

In *Williamson* v. *Jones, supra,* in speaking of the rights of a co-tenant in oil lands, the court said: "and, if he did not wish partition, oil being capable of loss from wells on lands nearby, perhaps, he could ask a court of equity to allow him to bore, and take his share of the oil, and pay the balance to the remainder-man, like that jurisdiction exercised by equity to direct timber in a state of decay to be cut down for the benefit of those entitled to the inheritance, if it would do no damage to the life-tenant, compensating him for the use of the land." It is not clear from this expression whether it is meant that one co-tenant might in equity maintain a bill against his unwilling co-tenant to enable him to bore on the common property to prevent loss of oil by drainage. That was not a point of decision in that case and we find no case warranting such conclusion. From the above suggestion it is argued that equity at the suit of a co-tenant against a co-tenant may, independent of partition or other equitable grounds, decree the sale of ripe or decaying timber to prevent waste; this proposition is advanced to meet the objection raised in this case that the sale was ordered before ascertaining the respective co-tenant's shares, a prerequisite we have

seen, ·if the sale is to be made for the purpose of partition.
We have found no case where this has been done at the suit
of a co-tenant. We do not say that in no case can it be done,
but we find no instance in which it has been done. If the
interests of the owners be known, there is a speedy remedy
by way of partition. If it can not be divided in kind, it may
be sold; and there is no reason why it might not be sold
without selling the land, giving the purchaser reasonable
rights of removal. But if the interests be unknown, and the
court can see that it will take a long time to ascertain the
respective interests, during which time there must inevitably
be great loss, it might be that the court at the suit of a co-
tenant in partition proceedings, if imperious necessity de-
mand, could decree a sale of the subject matter in advance of
a determination of the interests of the parties. But to war-
rant such an exercise of judicial power there should be the
strongest and most urgent necessity; and it is extremely
doubtful even then, whether the court would have the right
to sell a man's interest in land without his consent in advance
of determining definitely what his interest is. In discussing
the power to sell in partition proceedings, in *Croston* v. *Male,*
56 W. Va. 205, 49 S. E. 136, Judge POFFENBARGER aptly and
forcibly said:

> "But the court has no right to decree a sale without
> their consent, unless it finds, first, that partition in kind
> can not be conveniently made, and second, that the in-
> terests of the parties owning the land will be promoted
> by a sale. These two requisites are conditions imposed
> by the statute, which alone confers upon a court of
> equity the power to make a sale at all. They are im-
> portant and indispensable conditions. The statute is an
> innovation upon the common law, taking away from the
> owner the right to keep his freehold, and converting his
> home into money. That must not be done except in
> cases of imperious necessity. It is a legislative altera-
> tion of a canon of the law which forms part of the sub-
> structure of our jurisprudence. Forcible conversion of
> property into money is avoided wherever possible. To
> prevent this, the possessory writs, such as detinue and
> replevin, etc., for recovery of the property itself, instead
> of turning the injured owner away to sue for its value
> as damages are given, and where the property is of such
> nature, that the remedies of the law courts are inadequate

to its recovery, equity supplies the defect by the use of its more diverse and flexible processes. Therefore, it would be at variance with fundamental and basic principles to say the legislature intended to authorize a sale instead of a division for any light or trivial cause. So sacred is the right of property that, to take it away from one man and give it to another for private use, is beyond the power of the state itself, even upon payment of full compensation. The *jus publicum* alone authorizes the conversion of the citizen's property into money without his consent.''

Whether such power can be exercised in any case we need not determine. Upon a pains-taking review of the evidence in this case, we have come to the conclusion that no imperious necessity demands a sale of the timber in question. Usually the finding of facts by the trial court, upon conflicting oral evidence, will not be disturbed; but we are impelled to believe that the court in the instant case overlooked some strong and controlling facts. It is shown that when Stuart Wood died in March, 1914, he was about to conclude a sale of the timber on these two tracts with the Hutchinson Lumber Company. Plaintiffs' witness, R. L. Hutchinson, who was then and is now the representative of the Hutchinson Lumber Company, testified that a contract had been tentatively agreed upon covering the timber on the Miller's Creek watershed, at $200,000.00. He was then familiar with the timber, and estimated there was 7000 feet to the acre. He says there was considerable fallen timber there, probably as much as 7%; that most of the large poplar timber had been taken off. It appears that these two tracts were cut over and the large oak and poplar removed from twenty-five to thirty-five years ago, except upon a tract of about 300 acres in the head of Miller's Creek which is virgin forest. Hutchinson testifies, in 1920, that if the quantity and quality were the same then that he found some six years ago it would be worth 50% more than his offer, or $300,000.00. While he thinks the timber is deteriorating, it is pretty clearly shown that the value of standing timber is constantly increasing. There is no showing of any sudden change, no great emergency. The danger from forest fires or storms is no greater than in 1914; there is no showing that there has been any blight from disease or

insects since this suit was instituted. Whatever loss is being sustained from this and all other causes, it is gradual and the increased growth of the younger timber tends to off-set it. This natural increase in growth, coupled with the increase in prices of standing timber occasioned by its growing scarcity generally, is certainly sufficient to warrant a court of equity in withholding sale on the ground of waste. If 10% of the timber be decaying and 10% be ripe ready for cutting, as argued, and the remaining 80% growing and increasing in quality and size, it would hardly seem that a court of equity would be justified in selling a co-tenant's interest against his will, in advance of determining his interest, for the avowed purpose of saving him and his co-tenants from loss.

While the decree is ostensibly based on waste, as a matter of fact it is based on partition. One witness states that the timber can not be divided, and that it will promote the interests of all parties to sell; yet we see no insuperable obstacles to a partition of timber in kind. Upon these two tracts there are about 65,800,000 feet, a very large quantity indeed, so much so in fact, that we can see no reason, based on the facts disclosed in the record, why it can not be divided in kind, whether defendant's interest be 36.5% or 50%. The lands are underlaid with minerals, coal and probably oil and gas. Considerable quantities of timber will be needed for mining operations. It is alleged in the original bill that the chief value of the lands is in the mineral. With such a large acreage, we see no reason why a sale of the whole will be necessary to a partition. But that is a matter yet to be determined. A significant fact is that when the original bill was filed, plaintiffs did not then say a word about timber waste; they waited for six years before raising that issue and then show no serious change in the situation since filing their original bill. Under all the circumstances disclosed by the record we think the decree is not justified and it will therefore be reversed. The cause will be remanded for such other proceedings to be had, according to the settled principles and rules governing courts of equity.

*Reversed and remanded.*