361 So.2d 329 (1978)
Mittie Alice Cooper Rushing THREATT et al.
v.
Johnny Roy RUSHING et al.
No. 50434.
Supreme Court of Mississippi.
July 26, 1978.
Rehearing Denied August 23, 1978.
*330 Adams & Odom, Joe R. Odom, Walter T. Rogers, Meridian, for appellants.
Thomas L. Goldman, Meridian, for appellees.
Before PATTERSON, BROOM and LEE, JJ.
BROOM, Justice, for the Court:
Whether one whose interest in lands consists of (1) a life estate plus (2) an undivided one-fourth in the fee interest may, without consulting the cotenants, cut and sell timber is the chief issue of this cause appealed from the Chancery Court of Lauderdale County. Johnny Roy Rushing, Andrew Ray Rushing, and Mittie Edna Rushing Foster (appellees) sued appellant, Mittie Alice Cooper Rushing Threatt (Mrs. Threatt herein), Henry Cornish and Glen Cornish, seeking to enjoin Mrs. Threatt and the two Cornishes from cutting timber and seeking a judgment for timber already cut. The lower court granted the injunction and entered a money decree against Mrs. Threatt and the two Cornishes for $9,344.26. We affirm.
Mrs. Threatt owns a life estate in the timberlands in question, and an undivided one-fourth interest in the fee interest. She previously owned the lands in fee simple but later deeded the lands to her children (appellees), reserving a life estate. Afterward one of her daughters deeded back a one-fourth interest to her, leaving the three remaining children, Johnny Roy Rushing, Andrew Ray Rushing, and Mittie Rushing Foster owning an undivided one-fourth interest each. She attacked her deed to the children but this court upheld the deed in Threatt v. Rushing, 355 So.2d 1096 (Miss. 1978), decided without a written opinion.[1] According to Mrs. Threatt's testimony, in 1976 she decided to "improve" the timber by cutting out mature trees, leaving a good stand "that could reseed," and employed Henry Cornish (one of appellants) to selectively cut the mature trees. Whether she notified her children (remainder cotenants, appellees) is disputed. Cornish agreed to pay her $100 per thousand feet for the pine and $60 per thousand for hardwood (clear to her). The children sued Mrs. Threatt in December 1976 and, pending trial, the parties entered an agreed order to the effect that timber cutting would cease, timber on the ground would be removed, and Mrs. Threatt and the two Cornishes (timber cutters) would account for the timber already disposed of. Mrs. Threatt was to have two-fifths, and the children three-fifths of the proceeds.
Forester Goforth testified at trial that the lands had about 1,019,300 board feet of standing timber, of which 92,300 board feet of pine and 21,200 board feet of hardwood had been cut, the timber already cut being worth about $14,825.63. According to Goforth, the land was primarily used for growing timber and needed to be thinned or "you're taking a chance" on losing profit. Henry Cornish testified that his "thinning" made the smaller timber grow faster and improved the timber. Cornish explained that his method of timber removal did less damage than the method used by the big timber companies, but that his was more expensive. He admitted that the children had told him to quit cutting the trees. The timber (cut and standing) was checked and appraised by witness Goforth partly at the instance of appellees and additionally at the court's direction. Included in the money decree against Mrs. Threatt is $460 for the *331 services of Goforth in estimating and appraising the timber.
Did Mrs. Threatt, the life tenant, waste the interests of the remaindermen (her children) by cutting the timber? The correct test may be stated thusly: Do the acts of the life tenant in cutting the timber damage or diminish the value of the chief inheritance? If so, such acts are actionable waste. This was the meaning of Leonard v. Ogden, 80 Miss. 769, 32 So. 278 (1902), which stated that "the cutting down by the tenant of trees for sale is waste ... an injury to the inheritance... ." Cannon v. Barry, 59 Miss. 289, 306 (1881), an earlier case, held that acts dictated by "good husbandry" are not in law waste. Under the common law, a life tenant (as is Mrs. Threatt) may cut growing timber for estovers, making necessary repairs, for fuel, or to pay taxes, but cannot "lessen the value of the inheritance." 1 Thompson on Real Property, § 104 (1964).
Here, Mrs. Threatt holds a life estate, and by virtue of the fact that one of the daughters had deeded back her (the daughter's) one-fourth interest, Mrs. Threatt holds a one-fourth of the remainder interest along with her other three children (appellees). We cannot agree, given facts of this case, that the lower court erred in holding that Mrs. Threatt's undertaking to cut the mature timber (leaving enough for reseeding) was simply not "good husbandry." Testimony shows there was over one million board feet of mature timber on the lands; to cut such a large part of the timber would obviously reduce the value of the chief estate. The cutting of timber here was of great magnitude and not for "estovers" or merely for the purpose of improving or maintaining the estate, but was in a large measure a commercial operation of Mrs. Threatt for profit and constitutes waste.
The second proposition argued on behalf of Mrs. Threatt is that as a cotenant, i.e., owner of an undivided one-fourth interest in the lands, she has a right, acting unilaterally, to harvest one-fourth of the mature timber and retain the proceeds. Mr. Goforth, appellees' witness, indicated that Mrs. Threatt and the Cornishes had not cut one-fourth of the mature timber on the property in dispute, but only about 92,300 board feet of pine and 21,200 board feet of hardwood out of a total mature timber of 1,019,300 board feet.
There is conflict among authorities as to whether or not a cotenant may cut timber from common property without the consent of the other cotenant(s). 20 Am.Jur.2d Cotenancy and Joint Ownership § 36 (1965) appears to recognize the right of one cotenant to cut up to his fractional interest of such timber, but to the contrary is 86 C.J.S. Tenancy in Common § 54 (1954). This court has not, so far as we can find, clearly decided the issue but dealt with it to some extent in Leatherbury v. McInnis, 85 Miss. 160, 37 So. 1018 (1904). That dispute involved the defendant's boxing of trees for turpentine on a tract of 1,040 acres in which he owned an undivided one-half interest. He had boxed 120 acres of trees and expressed the intention of boxing trees on the whole property, which was valuable only for its pine timber. Appellees obtained an injunction restraining him from boxing any more trees, and the lower court overruled a motion to dissolve the injunction. On appeal this court held that the injunction was properly granted, but that it should have only restrained the appellants from boxing more than one-half of the trees in value and quantity.
The rule of foreign jurisdictions varies widely, as indicated by the contrasting views cited in 86 C.J.S. Tenancy in Common § 54 (1954). In Rhode Island, timber is treated like crop income from the land and thus may be sold without liability for waste. Conversely, in the State of Washington timber is considered part of the realty and thus subject to an action for waste. Rayonier, Inc. v. Polson, 400 F.2d 909 (9th Cir.1968); Buchanan v. Jencks, 38 R.I. 443, 96 A. 307 (1916).
We held in Bernard v. Board of Supervisors, 216 Miss. 387, 62 So.2d 576 (1953), that timber of commercial size is part of the *332 realty (the same as in Washington, but the opposite of Rhode Island.) Our decision in Learned v. Ogden, supra, indicates that trees when severed from the soil become personal property of the "reversioners" (cotenant children here) who may maintain an action for possession. This is consistent with Shepard v. Pettit, 30 Minn. 119, 14 N.W. 511 (1883), where the Minnesota court said that timber, when severed, becomes the personal property of the cotenants. Each would own a proportionate share and be entitled to an accounting for his fair share upon conversion or sale.
The 9th Circuit, in construing the rights of an assignee of a cotenant to remove timber, in Rayonier, Inc. v. Polson, supra, stated:
[O]ne cotenant of real property may use and enjoy the entire property to the fullest extent consistent with the ordinary manner of deriving profits from property of like character ... and he may grant to other persons freely and without the necessity of the consent of his cotenants, his interest in the property and whatever rights he enjoys... .
But:
Courts generally hold that a cotenant has no right to remove substantial amounts of timber from land having a value primarily for its timber and that to do so constitutes waste for which he is liable. E.g., Provident Life & Trust Co. v. Wood, 96 W. Va. 516, 123 S.E. 276, 41 A.L.R. 570 (1924); Nevels v. Kentucky Lumber Co., 108 Ky. 550, 56 S.W. 969 (1900); Graybiel v. Burke, 124 Cal. App.2d 255, 268 P.2d 551 (3d Dist. 1954). See generally 2 H. Tiffany, Real Property § 651 (3d ed. B. Jones 1939); Annot., 2 A.L.R. 993 (1919); Annot., 41 A.L.R. 582 (1926). (400 F.2d at 919).
In some jurisdictions a cotenant may cut his fractional share of the timber (not merely stumpage, but determined by commercial and other considerations) without consulting with or being accountable to the other cotenants. Such a rule seems to allow cotenants to vie or race with each other in the disposition of their estate, and could create a situation in which all the cotenants might descend on the property, taking what they individually seize upon so long as they limit themselves to their fractional share. How such a rule can be applied without pandemonium or chaos is not clear. We hold that the better rule which we now adopt is that a cotenant may not sever timber from the land without consent of the other cotenant(s). If a cotenant cannot obtain such consent, he may have to resort to partition proceedings or some other form of litigation, but he may not unilaterally partition the property himself by simply cutting timber, even though he cuts only his own fractional interest of timber ownership. Leatherbury v. McInnis, supra, has been interpreted to mean that a cotenant cannot complain if another cotenant cuts timber not in excess of his proportionate interest. Our decision there seems, however, to be limited to the extent that a cotenant may be enjoined from cutting timber where such cutting is "tending to the destruction of the chief value of the property." In the present case, it is obvious that Mrs. Threatt's timber cutting would likely damage the "chief property"  the value of the total estate  and to that extent Leatherbury is not authority to say that the injunction against Mrs. Threatt and the Cornishes was erroneously granted. Admittedly, the concluding language of Leatherbury is capable of being construed to mean that a cotenant may not be enjoined from cutting up to his fractional interest in the entire estate, but, to that extent, our decision there (if it be so understood) is modified.
Mrs. Threatt contends that the court misapplied the doctrine of waste to the facts of the case, and that the record is undisputed that she observed "good husbandry" in cutting the timber. She argues that, in issuing the injunction, the trial court mistakenly assumed that any cutting of trees, even for the sake of "good husbandry," constituted waste. Here, however, the magnitude of the cutting operation of Mrs. Threatt was far beyond the bounds of "good husbandry," and it clearly appears that detriment was being done to the chief estate or inheritance. *333 Our scrutiny of the record shows that the injunction was properly issued pursuant to Cannon v. Barry, 59 Miss. 289 (1881), in which the assignee of the life tenant was enjoined from committing further "acts of voluntary waste to the detriment of the inheritance." See also, Hemphill v. Mississippi State Highway Comm'n, 245 Miss. 33, 145 So.2d 455 (1962).
Finally it is argued that the trial court erred in holding liable Henry Cornish and Glen Cornish (the ones doing the actual cutting for Mrs. Threatt). We find no merit to that contention, and hold that no reversible error has been established.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., ROBERTSON, P.J., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] When Mrs. Threatt arranged to have the timber cut, her attack on her deed to the children was on appeal here, rendering her interest in the land then unsettled. If said deed were held void she apparently would have been fee owner; otherwise she would have owned a life estate plus one-fourth of the remainder.