THOMAS, J.,
for the Court:
¶ 1. Fly Timber Co., Inc. appeals the decision of the Pontotoc County Chancery Court finding Mary White and Fly Timber jointly and severally liable for damages to Milton Waldo and Harvey Waldo for the unlawful and illegal cutting and removing of timber pursuant to Miss.Code Ann. § 95-5-10 (Rev.1994) and the subsequent award of damages to Milton and Harvey Waldo in the amount of $10,857.14 each plus $3,106.50 each for reforestation penalty pursuant to the same statute together with attorneys fees and legal interest. Fly further appeals the lower court’s ruling denying their indemnification claim against White for executing and delivering a General Warranty Timber Deed purporting to convey merchantable timber to Fly in the amount of $38,000. From these rulings, Fly assigns the following issues for review
I. WHETHER THE LOWER COURT ERRED IN ASSESSING DAMAGES AGAINST MARY WHITE AND FLY TIMBER CO, INC. PURSUANT TO MISSISSIPPI CODE ANNOTATED § 95-5-10 (Rev.1994).
II. WHETHER THE LOWER COURT ERRED IN FAILING TO ADJUDICATE AND DECREE THAT MARY WHITE IS LIABLE TO FLY TIMBER TOGETHER WITH ATTORNEYS FEES AND INTEREST FROM THE RESULTING BREACH OF THE WARRANTIES CONTAINED IN SAID TIMBER DEED.
Finding reversible error, we reverse and remand.
FACTS
¶ 2. The instant dispute involves the harvesting of timber from approximately 145 *1069 acres of land situated in Pontotoc County, Mississippi. The acreage originally belonged to H.N. Waldo who died intestate on March 7, 1971, thus leaving the following seven heirs at law:
1. J. T. Waldo, son, who died on March 31, 1981, leaving three heirs, being his children: Tonya Waldo and Tina Faulkner, and widow, Nina Vicknair;
2. Curtis Lee Waldo, son, who died on February 25, 1997, leaving children, Curtis Lee Waldo, Jr., who died on May 11, 1988, and Melissa Cox, and a widow, Wanda Speight;
3. Harvey Waldo, son;
4. Milton Waldo, son;
5. Mitchel Waldo, son;
6. Gary Waldo, son;
7. , Mary Waldo White, wife and widow.
¶'3. On September 15', 1975, White purchased the instant property at a tax sale through the tax collector’s office of Ponto-, toe County. Three separate tax deeds for the instant property were received by White on September 28, 1977, each deed duly recorded in the chancery clerk’s office of Pontotoc County, Mississippi. On February 9, 1995, White executed a timber deed to the instant property to Fly, purporting to convey all merchantable timber standing, lying and being situated upon said property for the sum of $38,000 and that she had good and merchantable title to the timber conveyed and that the same was free and clear from all liens and encumbrances.
¶ 4. On August 7, 1995, Milton and Harvey Waldo filed a complaint to quiet title and set aside the tax deed against White and Fly. Milton and Harvey alleged that they each inherited a Yi undivided interest each in the subject property resulting from the intestate death of their father H.N. Waldo on March 7, 1971. In support of said complaint, Milton and Harvey asserts that the above mentioned tax deeds are invalid and void because no notice was given to them at the time of said sale, that the description is invalid, and that White, in fact, owned a ^ undivided interest in said property as tenants in common with Milton and Harvey, among others.
¶ 5. On September 6, 1995, Fly, by answer of the allegations set forth in the above mentioned complaint and cross-claim against White, asserted that by the warranty timber deed dated February 9, 1995, White conveyed all merchantable timber standing and being situated upon the subject property to Fly for the sum of $38,000 and stated affirmatively that by execution and delivery of said deed, White warranted good and valid fees simple title to the timber and forestry products conveyed therein, when in fact she did not. Fly, therefore, argues that she should be held liable for damages, reasonable attorney fees, and all costs incurred under the general warranty as granted by the deed.
¶ 6. On October 4, 1995, White filed an answer and cross-bill denying all allegations contained in the Waldos’s complaint, except to. admit that she had paid all real property taxes and had obtained a tax sale deed September 15, 1975. White further admitted that she had conveyed the timber deed to Fly on February 9, 1995. On July 24, 1996, White served Fly with a request for admissions that with respect to the purchase of the timber from her by Fly, that Fly utilized an attorney and requested a title check to determine the ownership of said property, that according to the title opinion, the ownership of the property in question was vested in White, and that Fly received and acted upon said title opinion. This request went unanswered and therefore, was deemed admitted by the chancery court on May 16,1997.
¶ 7. A hearing was held before the Chancery Court of Pontotoc County, Mississippi on December 2, 1997. In this matter, following the December 2, 1997 hearing, a stipulation between the parties was filed on February 11, 1998, stating that the records of the Chancery Clerk’s Office of Pontotoc County, Mississippi do not reflect that Milton and Harvey were served notice *1070 of the tax sale by either registered or certified mail or by the Pontotoc County sheriffs office.
¶ 8. On September 10, 1998, the chancery court entered its decree removing all clouds on the subject property and setting aside and holding null and void all tax deeds and the timber deed. The court further adjudicated that the Milton and Harvey were the owners of an undivided Hi interest each in the property free and clear of all clouds. Both White and Fly were found to have violated Miss.Code Ann. § 95-5-10 (Rev.1994) for the unlawful and •illegal cutting and removal of timber from the property and were held jointly and severally liable to the Waldos for statutory damages, attorneys fees, and costs. The chancery court calculated damages pursuant to the provision for such contained in § 95-5-10. The chancery court computed damages at $10,857.14 each ($38,000, the sale price of the timber, -r Hi, the undivided interest each held in the property, = $5,428.57 x 2, the double the value penalty contained in § 95-5-10, = $10,857.14) plus $3,106.50 each for the reforestation penalty (145 acres -t- Hi = 20.71 acres x $150, the reasonable cost of reforestation not to exceed $250 per acre provision of § 95-5-10). Attorneys fees were also awarded to the Waldos in the amount of $1,500 together with all court costs. No findings of fact or a decision, for that matter, was rendered with regard to the cross-claim filed by Fly against White for indemnification. The matter went unaddressed in the chancery court’s decree. Fly appeals this decree entered against it in favor of the Waldos.
ANALYSIS
I.
WHETHER THE LOWER COURT ERRED IN ASSESSING DAMAGES AGAINST MARY WHITE AND FLY TIMBER CO., INC. PURSUANT TO MISSISSIPPI CODE ANNOTATED § 95-5-10 (Rev.1994).
¶ 9. Fly argues that the assessed damages against them pursuant to Miss.Code Ann. § 95-5-10 (Rev.1994) was a decision made in error given that the record is void as to any testimony or proof that either White or Fly wrongfully or unlawfully cut and removed the timber from the acreage in question given that the purported conveyance of the timber by White to Fly as rightful owner under warranty contained a general warranty of ownership. Before we proceed with our analysis, we feel it prudent to briefly touch on the issue of the tax title as it pertains to the suit now before us.
¶ 10. As. previously noted, White attempted to obtain a valid tax title to the instant property after purchasing the property at a tax sale through the tax collector’s office of Pontotoc County in September, 1975. This was done, despite her already owning a Hi undivided interest in the property as a whole by virtue of the death of her husband, H.N. Waldo who died intestate on March 7, 1971. Our review of the record also reveals that White never brought suit under the provisions of Miss.Code Ann. § 11-17-1 (1972), “Pro- ■ ceedings to confirm tax title.” Section 11-17-1 allows the purchaser of property to bring a suit in equity to confirm the purchased tax title. Furthermore, it is evidenced in the record that White entered into a stipulation agreement with opposing party that despite purchasing the property, receiving the tax deeds, and duly recording them, “the records of the Chancery Clerk’s Office of Pontotoc County do not reflect that the plaintiffs, Milton Waldo and Harvey Waldo, received notice of the tax sale by registered or certified mail.” Equally so, the plaintiffs were never served with notice through the Office of the Sheriffs Department of Pontotoc County and stated that they would testify to the same. Therefore, we must conclude that the tax deeds were never confirmed nor was notice of the actual sale ever provided to the other six co-tenants.
¶ 11. Returning to the issue at hand, we address this argument in light of the un- *1071 contradicted testimony that White was, in fact, a Vi interest owner of the undivided* property as a whole and had given consent, via the warranty timber deed, as conveyed to Fly. We note that while the testimony as contained within the record denotes consent from only one co-tenant, that being White, the remaining co-tenants, each owning varying fractions of an undivided interest in the property as a whole either withheld their consent or their consent was never sought. This pivotal fact is determinative in our analysis of whether the chancery court erred in assessing damages against White and Fly pursuant to Miss. Code Ann. § 95-5-10 (Rev.1994) and is addressed summarily.
¶ 12. The lower court found that both White and Fly violated § 95-5-10 for the unlawful cutting and removal of timber. They were adjudicated jointly and severally liable to the Waldos for the statutory damages and reforestation penalties therein contained together with attorneys fees and costs. We first note the construction and nature of § 95-5-10 is highly penal in its provisions and remedies. Previous interpretations involving earlier versions of the statute resulted in very strict construction when addressing its application. Lochridge v. Hannon, 236 Miss. 687, 690, 112 So.2d 234, 236 (1959). We further note that § 95-5-10 and the provisions therein contained have been construed by the Mississippi Supreme Court as the “exclusive remedy” for cutting trees without consent. McCain v. Memphis Hardwood Flooring Co., 725 So.2d 788 (Miss.1998) (citing Greenlee v. Mitchell, 607 So.2d 97, 111 (Miss.1992)). This “exclusive remedy” is of course contingent upon a successful meeting of the requirements and provisions therein contained within the statute.
¶ 13. Section 95-5-10 provides for the liability of “any person [who] shall cut down ... or take away any tree without the consent of the owner of such tree.... ” Miss.Code Ann. § 95-5-10(1) (Rev.1994) (emphasis added). Under the ‘highly penal’ aspect of the statute, damages of double the value of the timber cut together with the costs for reforestation of the land are provided.. Id. The statute further provides an additional penalty of $55 per tree as damages owed to the owner when the “cutting down ... or taking away of a tree without the consent of the owner of such tree be done willfully, or in a reckless disregard for the rights of the owner of such tree.... ” Id.
¶ 14. As a statute requiring strict - construction, we are persuaded by the Mississippi Supreme Court’s holding in Bollinger-Franklin Lumber Co. v. Tullos, 124 Miss. 855, 859, 87 So. 486, 486 (1921), wherein the court declined to apply the statute when one of several co-tenants was not made a party to the proceedings. This case specifically touches upon the meaning of the term “owner” with regard to its usage within the statute and its application to land owned by co-tenants. In Bollinger-Franklin, the supreme court ruled that in order to recover damages under the penalty provisions of the statute, joint owners are required to put on proof that the cutting was done without the consent of all the owners. Id. With respect to a suit brought under the statute, specifically in disputes involving multiple tenants, “consent” given by one of several tenants was addressed by the supreme court in the following: “if any one of the tenants in common consented to the cutting, then such consent would bar his recovery and also defeat all of the others.” Id., see also Haley v. Taylor, 77 Miss. 867, 871, 28 So. 752, 753 (1900). This narrow interpretation of the statute’s construction begs the conclusion that the meaning of the term “owner” is to be construed as including the necessary presentment of proof that “consent” was not present from any and all tenants sharing ownership in undivided property in order that a suit under § 95-5-10 be maintained. Such an interpretation bars the application of § 95-5-10 to the present dispute given the undisputed facts contained in the case now before us. As an uncontradicted owner of an undivid *1072 ed Hi interest in the property as a whole, White’s consent as contained within the warranty timber deed to Fly prevents the other tenants from seeking damages and prevailing under § 95-5-10. However, this is not to say that the other tenants are without remedy against White and Fly under the common law doctrine of waste for their share of the value of the timber cut. See Threatt v. Rushing, 361 So.2d 329, 333 (Miss.1978). Finding reversible error, we reverse and remand this case to the chancery court for additional findings and conclusions with respect to the amount of damages to be assessed jointly against White and Fly upon principles of common law waste, in lieu of the inapplicable statutory damages contained in § 95-5-10.
II.
WHETHER THE LOWER COURT ERRED IN FAILING TO ADJUDI- , CATE AND DECREE THAT MARY WHITE IS LIABLE TO FLY TIMBER TOGETHER WITH ATTORNEYS FEES AND INTEREST FROM THE RESULTING BREACH OF THE WARRANTIES CONTAINED IN SAID TIMBER DEED.
¶ 15. Fly argues that the lower court erred in failing to adjudicate, or even address for that matter, the issue of whether White is liable to them for damages through indemnification based on White’s executing and delivering the warranty timber deed as asserted in their cross-complaint. Our review of the record fails to reveal any reference or judgment, in either the transcripts or the decree, to the issue of Fly’s cross-complaint against White on the issue of indemnification. We, therefore, must conclude that we remand this issue for further proceedings in which the chancellor would, based on the evidence presently in the record, or upon the chancellor’s discretion, any additional evidence as to indemnification which may aid him in his decision, make appropriate findings of fact and conclusions as pertaining to the indemnification issue raised in the cross-complaint filed by Fly. In this light, for this Court to make a decision on the unaddressed issue of indemnification would be to engage in speculation as to how the chancellor would have ultimately decided the issue based on his findings of fact. Only after such determination has been reached may this Court, in the event of a subsequent appeal, make a proper inquiry into the appropriateness of the findings of fact and conclusions of law. This issue is remanded to the chancery court for detailed findings of fact and conclusions of law as to the issue of indemnification raised in the cross-complaint. Finding error, we reverse and remand.
¶ 16. THE JUDGMENT OF THE PONTOTOC COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPEL-LEES'.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.