[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 92 
¶ 1. The estate of a long-deceased owner of land brought suit against timber cutters whose rights to the timber were granted by only two of a large number of heirs who owned the property. The chancellor dismissed, finding that the estate was not a proper party and that adding the true parties in interest would be futile since they would have no cause of action against the timber cutters. We disagree. Therefore we reverse, order the substitution of the heirs, and remand.
 FACTS ¶ 2. Elizabeth Moffett died intestate in 1917. Apparently no estate was opened at that long-ago time. However, estate proceedings were finally commenced in 1965 for the purpose of defending against an eminent domain suit concerning approximately 120 acres of land Moffett had owned in Jones County, Mississippi. The estate was closed in 1971.
 ¶ 3. Moffett had ten children. One died without issue. The 120 acres that she owned at her 1917 death is now owned by the heirs and devisees of the nine children. Among those heirs are Elouise Gaines and Nathaniel Crump, who own a combined 5/72 interest in the property. On July 19, 1999, Gaines and Crump executed warranty timber deeds on the 120 acres to Mark Isle and Jesse Edwards. Southgate Timber Company then contracted with Isle and Edwards for the timber.
 ¶ 4. After the timber was cut, the Moffett estate was reopened solely to authorize suit against the timber deed grantees and their assign, Southgate. On July 18, 2000, Evelyn Tolbert, as newly-named administratrix of the Moffett estate, filed suit against Southgate, Isle, and Edwards. Southgate later filed a cross-claim against Isle and Edwards, and a third-party complaint against the cotenants Gaines and Crump. Isle and Edwards were not served with process and have never appeared. A month later, two individuals claiming to own an interest in the property filed to intervene.
 ¶ 5. In May 2004, Southgate filed a motion to dismiss for failure to state a claim upon which relief may be granted and for lack of subject matter jurisdiction, or in the alternative for summary judgment. The estate sought to amend the complaint to add some of the Moffett heirs as plaintiffs. The chancellor denied the motion to amend and granted the defense motion to dismiss. The estate's appeal has been deflected to this Court.
 DISCUSSION 1. Standing
 ¶ 6. The administratrix of the Moffett estate brought suit to recover the fair market value of the trees that the defendants cut from the property, claiming that the owners other than those from whom timber deeds had been obtained must be compensated. The chancellor found that the estate was not a proper plaintiff in this litigation, since title to an intestate's real property descends to that person's heirs and does not pass through the estate. That proposition is a venerable one:
 These lands, which belonged to Charles McCarroll in his life time, descended to his heirs upon his death. The title became vested in them, and can only be *Page 93 
divested by the decree of the probate court, upon proceedings instituted and conducted according to the statutes of the state. The administrator, as such, had no interest in the lands, and can only take possession in the mode and for the purposes enumerated by the law. One case is given by the statute in which he may sell the real estate, and that is when the personal property is insufficient to discharge the debts of the deceased. Another is, perhaps, when it can be shown that it was for the interest of the heirs to convert it into money. But in any proceeding, in one case or the other, the heirs must have notice.
Campbell v. Brown, 7 Miss. 230, 235 (1842). Several decades after Campbell, the high court stated that the "common law is that the land descends directly and immediately upon the death of the ancestor to the heir." Moore v.Ware, 51 Miss. 206, 210-11 (1875). The administrator of an estate "has no interest in the real estate, or right or power over it," except under long-existing statutory right for real property to be pulled into the estate when personal property is insufficient to satisfy debts. Id.; see Miss. Code Ann. § 91-7-195 (Rev. 2004). In the year after the justcitedMoore decision, the court again discussed the statute that permits an estate to claim real property:
 The meaning which has been uniformly given to the statute is, that, while the land descends directly to the heir, it goes incumbered with the "charge;" and though the administrator has no title or interest in it, yet, when the contingency arises of the insolvency of the personal estate, he may assert his dormant right to the real estate, and appropriate it as assets.
Partee v. Kortrecht, 54 Miss. 66, 69 (1876). That charge did not exist here.
 ¶ 7. Other statutes make specific provision for an administrator's litigation authority. An estate administrator may bring suit regarding claims that arise during administration, such as to protect assets of the estate. Miss. Code Ann. § 91-7-231 (Rev. 2004). The real property having passed directly to Moffett's heirs in 1917, it would never have been an asset of the estate. An estate may also bring suit on claims that survived the death of the testate. Miss. Code Ann. § 91-7-233 (Rev. 2004). The claim for timber damages arose long after Moffett's death. Indeed, the claim arose over eight decades after Moffett's death, and is now being pursued in the next century.
 ¶ 8. Standing to bring suit exists in Mississippi if a party can "assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant." Harrison County v. City of Gulfport,557 So.2d 780, 782 (Miss. 1990). The requirement for standing "focuses judicial review on a plaintiffs legal interest and a defendant's legal duty." City of Picayune v. Southern Reg'l Corp.,916 So.2d 510, 526 (Miss. 2005).
 ¶ 9. Tolbert filed suit as the administratrix of Moffett's reopened estate. The estate had no colorable claim to the long-deceased Moffett's real property, nor any authority to bring suit regarding it. Whatever convenience arises from having an entity such as an estate represent a large number of heirs does not override the requirement that the actual parties in interest be the plaintiffs.
 ¶ 10. Reasonable time is to be given after an objection to substitute the proper entity or individuals who are the actual parties in interest. M.R.C.P. 17(a). The chancellor noted that an amendment to add new plaintiffs might correct the problem of using the estate as the representative plaintiff. The chancellor found that *Page 94 
questions would also need to be resolved regarding whether the amendment would relate back in time so as to overcome a statute of limitations hurdle. M.R.C.P. 15; Miss. Code Ann. § 95-5-29
(Rev. 2004) (beginning March 29, 1999, two-year statute of limitations applicable to Section 95-5-10 claims). However, the chancellor concluded that even if some of the actual owners of the real property became named plaintiffs, they had no cause of action against the named defendants. There was no claim to be made and the defendants were thus entitled to judgment, the court held, because the suit was controlled by Mississippi Code Section 95-5-10. Since whether the cited statute actually does control the litigation is the fulcrum on which the result of this appeal turns, we closely examine both the statute and the claims made in the complaint.
2. Cause of action under Section 95-5-10
 ¶ 11. The chancellor found that this litigation was governed by the following statute:
 (1) If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre. The liability for the damages established in this subsection shall be absolute and unconditional and the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability. To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken away by the defendant, his agents or employees, without the consent of such owner. The remedy provided for in this section shall be the exclusive remedy for the cutting down, deadening, destroying or taking away of trees and shall be in lieu of any other compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees but shall not limit actions or awards for other damages caused by a person.
Miss. Code Ann. § 95-5-10 (Rev. 2004). Section (2) of the statute provides for a heightened penalty in certain circumstances, but the operative language for our review is in the quoted subsection.
 ¶ 12. Long ago the Supreme Court concluded that because the statute was highly penal, it must be construed narrowly. If the owner of an interest in the land authorized the cutting of timber, the remaining owners have no claim under the statute. The right to the penalty is a joint right; what bars one owner to the penalty bars all owners. Bollinger-Franklin LumberCo. v. Tullos, 124 Miss. 855, 859-60, 87 So. 486, 486
(1921). Since two owners authorized the cutting of timber from the Moffett land, other owners may not use the penalty statute for their claims.
 ¶ 13. However, the rule has also been that an action for waste may be available when the statute does not offer a remedy. In one precedent, a mother deeded land to her four children, reserving a life estate. Threatt v.Rushing, 361 So.2d 329, 330 (Miss. 1978). One child deeded her interest back to her mother. Id. The mother then authorized the cutting of trees on the property; three children sued her and the timber cutters. At the time of suit, the *Page 95 
cutting had commenced but was not completed. Id. The Supreme Court upheld an injunction and money damages against the mother and the timber company she employed. Id. at 333. The court discussed the doctrine of waste that applied to these actions. Id. at 332. In order to avoid liability for waste resulting from reducing the value of the land, a cotenant must have the consent of all cotenants to sever timber.Id. The final holding in the case, without analysis, was that it was proper also to hold the timber cutters liable to account for the timber already sold. Id. at 330, 333. The penalty statute was not even mentioned, perhaps because of precedents such as Bollinger-Franklin Lumber, but the Supreme Court found that the nonconsenting cotenants had the remedy of a suit for damages under the doctrine of waste.
 ¶ 14. In a 2000 opinion, this Court relied onThreatt to state that even though cotenants could not sue under Section 95-5-10 for the penalty, "this is not to say that the other tenants are without remedy against [the cotenant] and [the timber company] under the common law doctrine of waste for their share of the value of the timber cut." Fly Timber Co.v. Waldo, 758 So.2d 1067, 1072 (citing Threatt,361 So.2d at 333). Between the dates of Threatt andFly, several changes were made to the timber penalty statutory approach, including adding this sentence:
 The remedy provided for in this section shall be the exclusive remedy for the cutting down, deadening, destroying or taking away of trees and shall be in lieu of any other compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees but shall not limit actions or awards for other damages caused by a person.
1989 Miss. Laws ch. 558, § 1, codified in Miss. Code Ann. § 95-5-10(1) (effective July 1, 1989). In Fly, we applied Threatt without analysis of the intervening and amending language that the statutory penalty was the exclusive remedy for claims involving the cutting down of trees.
 ¶ 15. We re-examine the Fly holding in the context of the facts of the present appeal. In our case, two cotenants authorized the taking of every other cotenants' property. The actual cutting was accomplished by third parties. No single cotenant has the right to cut the timber. In the past, failure of cotenants to abide by that limitation would subject them to claims for waste from other cotenants. A partition action or "some other form of litigation" was the proper remedy if cotenants could not agree on whether to have their timber cut. Threatt, 361 So.2d at 332.
 ¶ 16. These rights among cotenants — partition action before the cutting or a claim for waste if the cutting occurred without all owners' permission — have historically coexisted with the penalty statute in the field of remedies for improper cutting of timber. The judicial interpretations that made the penalty inapplicable if some individuals with possessory interests granted permission to cut, also permitted actions for waste. The question in this appeal is the effect of the 1989 provision that the penalty was the exclusive remedy with one exception, and no other "compensatory, punitive or exemplary damages" are collectible.
 ¶ 17. The only statutory exception to the exclusive remedy is that the penalty for cutting and taking away timber "shall not limit actions or awards for other damages caused by a person."Id. This Court has discussed the meaning of "other damages":
 The court went on to speculate that "other damages to which this statute *Page 96 
refers would be to property or persons incurred during the cutting of trees, unrelated to the destruction or damage of the trees." McCain [v. Memphis Hardwood Flooring Co., 725 So.2d 788,] 794 (¶ 21) [(Miss. 1998)]. The Encyclopedia of Mississippi Law gives more insight as to what is meant by damages unrelated to this destruction of trees, and list examples such as "damage to roads, fences, other improvements, or to the soil." [Ogletree, "Resources: Timber, Water Wildlife," in 7] Jeffrey Jackson Mary Miller, [ENCY. OF MISS. LAW] § 63:13[n. 1].
Smith v. Parkerson Lumber, Inc., 888 So.2d 1197, 1203
(Miss.Ct.App. 2004).
 ¶ 18. Southgate in effect argues that in 1989, the statute displaced every form of suit formerly coexisting with the statutory penalty. Despite the statute's allegedly broadened scope, Southgate would continue to give effect to precedents that made the statute unavailable to any group of cotenants who seeks damages against another group. Such an interpretation immediately creates situations in which no remedy exists for some takings of private property.
 ¶ 19. To understand the present statute better, we examine the acts of its creation. The 1989 enactment collapsed into one statute what previously had been divided into five, distinguished in the past by the type of trees cut. Miss. Code Ann §§ 95-5-1 through 95-5-9 (Rev. 2004), Ed. Note. Formerly, the good faith of the timber cutter was an affirmative defense. E.g., Miss. Code Ann. §§ 95-5-1 
95-5-3 (1972). In 1989, good faith was withdrawn as a defense, and the penalty was made the exclusive remedy. Miss. Code Ann. § 95-5-10(1). A heightened penalty was provided for cutting in reckless disregard of owners' rights. Miss. Code Ann. § 95-5-10(2).
 ¶ 20. The statutory penalty for cutting of trees has existed in some form at least since 1822. Miss. Code Ch. 12, art. 6, § 7 (1848). Recovery of the penalty or actual damages had long been allowed. Mhoon v. Greenfield,52 Miss. 434, 438-39 (1876). Until an amendment in 1924, the penalty was the only remedy mentioned in the statutes.E.g., Miss. Code § 3246 (1917). The 1924 amendment created a right to collect both the penalty and damages for the actual value, but only for cypress and certain other specified trees. 1924 Miss. Laws ch. 167, codified Miss. Code § 3411 (1930); Miss. Code § 1075 (1942); Miss. Code Ann. § 95-5-3 (1972). That 1924 change may have been a result of a 1921 opinion, which had held that actual damages and the penalty could not both be collected. Bollinger-Franklin Lumber,124 Miss, at 860, 87 So. at 486. Regardless of whether the exclusive remedy phrase means more, it at least means that a plaintiff no longer has a right to choose between actual damages and the penalty, and also has no right as to some trees to recover both.
 ¶ 21. To interpret the 1989 enactment, we are mindful of the canon of construction that when the legislature leaves statutory language unchanged, it presumably ratifies settled judicial interpretations of that language. In re Kelly'sEstate, 193 So.2d 575, 577-78 (Miss. 1967). As early as 1900 and never wavering thereafter, the Supreme Court found the penalty to be unavailable if any cotenant consented to the timber cutting. Haley v. Taylor, 77 Miss. 867, 871,28 So. 752, 753 (1900); Bollinger-Franklin Lumber,124 Miss, at 860, 87 So. at 486. We presume the 1989 legislature knew of the interpretation and if it wished to overturn the nearly ninety-year-long judicial view about consent by a cotenant, changes to the consent provision would have been made. Instead, the statutory *Page 97 
approach has since the 1900 decision provided for the penalty simply if "the owner" did not consent. E.g., Miss. Code Ann. § 4412 (1892); Miss. Code Ann. § 99-5-10(1) (Rev. 2004). Also judicially established was that waste occurs if all cotenants did not agree to the cutting. Threatt,361 So.2d at 332. It is unreasonable to interpret the 1989 statute as reversing Threatt's conclusions about title and authority of cotenants regarding timber. Cotenants were not authorized now to race each other in the cutting of their jointly owned timber, with the winner retaining the prize of the proceeds. The change was written in terms of remedies, not rights. The statute did not alter title to timber, which would be a statutory redistribution of private property, nor did it address one cotenants legal obligation to gain the permission of all before cutting timber.
 ¶ 22. Another source of information about the breadth of statutory change is the description of the purposes that appear in an enactment's caption. Aikerson v. State,274 So.2d 124, 127-28 (Miss. 1973), overruled on other grounds inConley v. State, 790 So.2d 773, 796 (Miss. 2001). The act's caption states that the new statute provides for a penalty in twice the amount of the value of the trees together with costs of replanting, increases the penalty when the cutting is willful, repeals the prior five statutes, and serves related purposes. 1989 Miss. Laws ch. 558, caption. There is no indication of a much bolder purpose such as to repeal the causes of action for waste or to limit remedies that were traditionally available to those who did not have a right to the statutory penalty. The caption does not mention exclusivity. It reveals a plan to simplify and consolidate the penalty provisions, not to abolish remedies used by those generically beyond the aid of the statute. If a revolution was being organized on this field of law, its heralding trumpet was surprisingly muted.
 ¶ 23. Also creating parameters for our analysis is the rule that to deny a class of injured persons any right to make a claim clashes with the provision that "every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law. . . ." Miss. Const, art. 3, § 24. The constitutionality of a statute is presumed, and it should be interpreted in a manner to avoid constitutional defect if that is possible without doing violence to the language. Estate ofSmiley, 530 So.2d 18, 22-23 (Miss. 1988). When there are two constructions that could be put on a statute, one permitting the statute to be found consistent with constitutional requirements and the other not, then the constitutional interpretation is to be chosen. This has been described as a "duty to adopt a construction of the statutes which would purge the legislative purpose of any constitutional invalidity. . . ." Cole v. Nat'lLife Ins. Co., 549 So.2d 1301, 1305 (Miss. 1989) (quotingSheffield v. Reece, 201 Miss. 133, 28 So.2d 745, 749
(1947)).
 ¶ 24. We examine prior precedents of the state's appellate courts to determine what interpretation has already been given to the exclusive remedy provision. The traditional non-statutory remedy against third-party timber cutters without authority from any owner was a suit for trespass and conversion.Greenlee v. Mitchell, 607 So.2d 97, 111 (Miss. 1992);Gilmore-Puckett Lumber Co. v. Bank of Tupelo,177 Miss. 152, 161, 170 So. 682, 683 (1936). The cited 1992 precedent referred to the 1989 enactment of Section 95-5-10, noted that the exclusive remedy provision applied only to causes of action arising after its passage, and found a trespass and conversion action still available in that suit.Greenlee, 607 So.2d at 111-12. *Page 98 
 ¶ 25. In the only Supreme Court opinion to analyze the exclusive remedy phrase, the landowners argued from pre-1989 precedents that they could sue for actual damages and for the statutory penalty. McCain v. Memphis Hardwood FlooringCo., 725 So.2d 788, 789 (Miss. 1998), overruled on other grounds by Stockstill v. Gammill, 943 So.2d 35, 46-49, 2004-CA-02193-SCT (¶¶ 23-28) (Miss. Oct. 26, 2006). As we have already discussed, the statutory right to sue for both the penalty and damages was repealed by Section 95-5-10.McCain, 725 So.2d at 791. The McCain timber cutter had encroached on the plaintiffs' property while cutting on adjacent land; the cutting on the plaintiffs' land was a trespass. Id. at 789. The Supreme Court stated that the 1989 enactment had removed the right to sue for actual value of certain kinds of trees in addition to the penalty, and that the only claim that these landowners had for the trespass and conversion of trees on their land was the statutory penalty.Id. at 791-92. A quite recent decision adjustedMcCain's analysis of applicable statutes of limitations but did not delve into exclusivity. Stockstill,943 So.2d at 46-49, 2004-CA-02193-SCT (¶¶ 23-28).
 ¶ 26. We discovered eight Supreme Court opinions since 1989 that cite this statute, but other than the ones discussed above, the cases do not reach this remedy point.E.g., Memphis Hardwood Flooring Co. v. Daniel,771 So.2d 924, 930 (Miss. 2000) (consent for cutting obtained from the proper owner was procured by fraud; nothing useful to today's issues was discussed).
 ¶ 27. This Court has several times found the penalty statute to be inapplicable. We allowed suit by a remainderman against the life tenant for waste since the statutory penalty was never available to such a claimant.Twin States Land Timber Co. v. Chapman,750 So.2d 567, 572 (Miss.Ct.App. 1999). When a cotenant had timber cut because of permission granted by another cotenant, a suit for common law waste could be brought against the timber cutter "in lieu of the inapplicable statutory damages contained in § 95-5-10." Fly, 758 So.2d at 1072. We even, somewhat expansively, allowed individuals who had only a contingent interest when the landowner consented to having the timber cut, to claim waste after exercising their option to purchase the land. McCorkle v. Loumiss Timber Co.,760 So.2d 845, 852-53 (Miss.Ct.App. 2000).
 ¶ 28. Less relevant, we stated in another suit that it would have been futile for a landowner to add a common law trespass count to her complaint against a person for cutting her timber, since Section 95-5-10 was the exclusive remedy.Jones v. Lovett, 755 So.2d 1243, 1247-48
(Miss.Ct.App. 2000); but see Stockstill,943 So.2d at 47, 2004-CA-02193-SCT (¶ 23 n. 7). It appears that no permission for the cutting had been granted. The penalty statute was thus the proper, sole, and squandered remedy.
 ¶ 29. As noted, several of our opinions allowed suits for waste to proceed when the claimants were among those who would never be entitled to the statutory penalty. The chancellor in this case believed that we erred when labeling a suit by owners against a third party without an ownership interest a claim for waste. We agree with the chancellor that at common law, when an owner of timber sued a complete stranger for the taking of timber, that was an action for trespass and conversion. Masonite Corp. v. Williamson,404 So.2d 565, 567-68 (Miss. 1981). However, when some but not all with ownership interests authorized agents to conduct the cutting, those claims are for waste whether against the contracting owners or against *Page 99 
their agents as joint tortfeasors. Learned v. Ogden,80 Miss. 769, 779-80, 32 So. 278, 279 (1902). Waste is a "substantial injury done to the inheritance, by one having a limited estate, during the continuance of his estate." MossPoint Lumber Co. v. Bd. of Supervisors of HarrisonCounty, 89 Miss. 448, 526, 42 So. 290, 300 (1906). A claim for waste against those involved in the cutting of commonly-owned timber does not depend on who wielded the ax. It depends on whether an owner approved the wielding.
 ¶ 30. We acknowledge that a plausible grammatical argument exists that no other remedy survived making the statute the "exclusive remedy for the cutting down" of trees. The statute imposes liability for cutting "by the defendant, [or by] his agents or employees, without the consent of such owner. . . ." Miss. Code Ann. § 95-5-10(1). That phrasing might bring within its literal reach an owner's claims not only against the timber cutters but also against any cotenant who assigned the right to cut. If consent by any owner still prevents an award of the penalty and the penalty now is the only remedy, then a cotenant would be prevented from recovering from anyone. Only if the taking of the timber was not a legal wrong at all would this denial be acceptable. Ensminger v. Ensminger,222 Miss. 799, 806, 77 So.2d 308, 310 (1955) (court's holding regarding interspousal immunity overruled in Burns v. Burns,518 So.2d 1205, 1207 (Miss. 1988)). On the other hand, "the breach of a legal duty owed by one person to another when damages have resulted therefrom gives the right to a cause of action."Stokes v. Newell, 174 Miss. 629, 641, 165 So. 542, 545
(1936).
 ¶ 31. Authorizing one cotenant to take other cotenants' property without providing any recourse would run afoul of the constitution's provision that "every person for an injury done him in his lands . . . shall have remedy by due course of law. . . ." Miss. Const, art. 3, § 24. The state cannot provide both that the statute is now the sole remedy and that cotenants cannot use the statute. This is not a sophisticated allusion, but such logic could be labeled a "Catch-22." In a 1961 book by that title written by Joseph Heller, nonexistent choices are the only ones offered. If the statute provides an actual remedy to someone wronged by timber cutting, it may be made exclusive even when forfeited because of delay. McCain,725 So.2d at 793. However, if there is no adequate remedy at law, equity will step in. Emmons v. Emmons, 217 Miss. 594, 600,64 So.2d 753, 755 (1953) ("equity will not suffer a wrong without a remedy.") From the earliest precedents that denied the penalty to some cotenants when other co-tenants consented, actual damages have been available. Haley, 77 Miss, at 871-72,28 So. at 753 (actual damages awarded); Bollinger-FranklinLumber, 124 Miss, at 859, 87 So. at 486 (actual damages not proved). Equity first stepped in over a century ago on facts such as these. The 1989 statute, constitutionally interpreted, did not presume to evict it.
 ¶ 32. In summary, the penalty as interpreted since 1900 does not apply to claims that fit the definition of waste. Claims for waste that were not subject to the statutory penalty included those made by interest owners against third parties who were authorized by other interest owners to cut timber. Until 1989, the statutory penalty had been an alternative remedy solely for claims that under the common law were for trespass and conversion. After 1989, the statute is not one alternative but is the exclusive claim that may validly be made for damage arising from trespass and conversion, in which no owner consented to the cutting. In other words, within its *Page 100 
area of coverage, the statute in 1989 eliminated all alternative or supplemental remedies. New areas of applicability were not added, however. This is a logical, reasonable, and natural interpretation in the context of the former statutory language. It is also a constitutional interpretation.
 ¶ 33. The previously recognized extra-statutory right still exists for nonconsenting cotenants to bring suit not only against their contracting fellow owners but also against the timber cutter. Owners whose timber is cut because of the trespass or other completely nonpermissive act of a wrongdoer are limited to the procedures and remedies of Section 95-5-10. These conclusions mean that the 1989 statute did not order a dramatic revolution in the rights of timber owners but only provided for a modest revision in the exercise of some of the rights.
3. Amendment of complaint
 ¶ 34. We now examine the chancellor's refusal to allow amendments to the complaint. The estate brought suit against Southgate and two individuals who were never served. Sought was $122,000 for the market value of the timber that was cut. The complaint does not refer to the statutory penalty. The estate's response to the motion to dismiss was that it was not seeking statutory damages but, as co-owner of the timber, simply wanted to share in the timber-cutting proceeds. The estate alleged that dismissal based on the unavailability of the statutory penalty would violate the constitutional provision we have already discussed regarding having a remedy for every wrong.
 ¶ 35. The chancellor's first opinion was on February 3, 2005. She found that though no cause of action was named in the complaint, the plaintiffs request for relief was "controlled" by Section 95-5-10. As the chancellor put it, "no matter how the suit is filed or pled, all owners of the real property in question are barred from seeking damages against any other third party because of the action of the two contracting cotenants. The estate was found to have no claim and allowing an amendment to join the actual heirs would be futile in light of the unavailability of the exclusive remedy.
 ¶ 36. A second opinion issued on November 2, 2005. The estate in a motion for reconsideration had again argued that no claim under the statute was being made. Perhaps in light of the references in the chancellor's first opinion toFly, the estate now labeled its claim as one under the common law doctrine of waste. In Fly, this Court had stated that nonconsenting cotenants could claim waste against the third-party timber cutter. Fly, 758 So.2d at 1072. The chancellor concluded that the claim against a party without an ownership interest should be labeled a trespass action, not waste. In her view, a claim for waste could only be made against the two cotenants who contracted for the cutting, not against South-gate. The chancellor used a legal dictionary to conclude that an action for waste requires that all parties have an ownership interest, while a trespass is against someone without an interest. BLACK'S LAW DICT. (6th ed. 1991), at 1502-03 (trespass) 1589-90 (waste). Dismissal was "based on the distinction between `trespass' and `waste.'" The chancellor concluded that due to the pleadings, the estate "can only proceed under the tort of trespass." The estate had asked instead to amend to bring a claim for waste, and that amendment was denied.
 ¶ 37. The chancellor then turned to whether the complaint could be amended to join the heirs of the long-deceased Elizabeth Moffett since they were the owners of the land. In the chancellor's view, allowing *Page 101 
an amendment here that would then relate back for statute of limitations issues would go beyond the purpose of the rules. M.R.C.P. 15(c). The present owners of the land — Moffett's numerous heirs — had always clearly been the real parties in interest. The relation back rules "were not intended to protect parties who should have been named Plaintiffs at the initial filing of the law suit when they were known." Moreover, two of the present owners were the cotenants who started this problem when they executed timber deeds; they could not properly be made plaintiffs even though they were Moffett heirs. The chancellor found that the Moffett estate should never have been reopened, and the estate should have known these heirs were the appropriate plaintiffs all along.
 ¶ 38. The chancellor refused to amend because of her holding that new plaintiffs could bring a suit for waste only against the two cotenants who signed the timber deeds. Reforming the suit as one by the nonconsenting heirs, newly named as plaintiffs, against the two consenting heirs, newly named as defendants, for waste would create an entirely new suit. As we have discussed, though, when a cotenant contracts with a third party to commit injury to the common property as opposed to committing the injury herself, the wrong by the third party may still be labeled "waste." We now turn to whether this complaint would need to be amended to make a claim for waste.
 ¶ 39. The complaint avoided putting a specific label on the cause of action, but it clearly eschewed the statutory penalty by seeking the actual value of the trees and not double the value under the statute. .After setting out the events that led to the cutting and asserting a right in the estate to bring suit, the complaint alleged that Southgate and the two individuals who got the timber deeds did "enter the land of the Moffett Estate, without permission of all the heirs and proceeded to cut, remove and sell timber" when the defendants knew that they had not received permission from all owners. The complaint set out the amount of damages based on the fair market value of the trees, and sought to impose liability on the defendants for that value and for attorneys' fees, jointly and severally. That language is proper notice of a claim for waste, or in the chancellor's view, for trespass and conversion. If the consenting cotenants are considered indispensable parties in a claim for waste against their assigns, they may be joined. M.R.C.P. 19. In the motion to reconsider the chancellor's first opinion, the estate argued that it should be allowed to proceed with an action for waste against Southgate, In finally choosing a label for its claim, the estate chose well. Yet it would not matter if the proper category were trespass and conversion. Substance controls, not labels. Since we are remanding, we set aside the chancellor's decision not to permit an amendment to join the two contracting cotenants in an action for waste. That can be reconsidered on remand.
 ¶ 40. The final issue is whether it was proper to refuse to substitute the non-consenting heirs for the estate as plaintiffs. This is the applicable court rule for substitution of plaintiffs:
 (a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the *Page 102 
same effect as if the action had been commenced in the name of the real party in interest.
M.R.C.P. 17. Substitution was denied because the chancellor found that adding the new plaintiffs would be futile. We disagree as to futility, as a claim for waste may properly be made. The original complaint was sufficient notice to permit evidence to be presented of waste. Thus we are squarely faced with whether the chancellor should have allowed the individual owners to be joined.
 ¶ 41. In one recent precedent, the Supreme Court allowed substitution of an estate as the proper party in interest, even after a previous appeal had affirmed a partial summary judgment and then remanded to consider a remaining claim. MethodistHosp. of Hattiesburg v. Richardson, 909 So.2d 1066, 1067-68
(Miss. 2005). The suit was for a wrongful death brought by the heirs. The court determined that the claim for pain and suffering must be brought by the estate. Id. On the remand, the defendant moved to dismiss based on the absence of the estate. The chancellor allowed a reasonable time for an estate to be opened, then joined the estate as a plaintiff. Id.
at 1068-69. In the second appeal, the defendant argued that the estate was a "stranger to the litigation" and should not have been allowed to join or intervene. The Supreme Court rejected that argument, finding that allowing the estate's joinder was proper. Id. at 1072-73.
 ¶ 42. In conclusion, the defendant's argument that the statutory penalty is invariably the only remedy for wrongful cutting of timber has now been resolved and rejected. The plaintiffs assertion that waste is the proper cause of action in this case is also resolved and accepted. The complaint has always simply stated that damages were sought for cutting timber without the permission of all the owners. The proper claim is exactly the one with which the defendant has been contending since the date the complaint was filed. The only reason to dismiss, then, would be because the estate is the named plaintiff. Rule 17(a) states that no suit is to be dismissed for the absence of the real party in interest. Affirming this dismissal would be ignoring the plain language of the rule.
 ¶ 43. We reverse and remand for proceedings consistent with this opinion.
 ¶ 44. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURTIS REVERSED AND THE CAUSE IS REMANDED FOR PROCEEDINGS CONSISTENTWITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.